THE PEOPLE, Plaintiff and Respondent, v. RANDOLPH WILLIAM GALLUP et al., Defendants and Appellants.

Michael Frank Eaker, in pro. per., and J. Patrick Francis, under appointment by the Court of Appeal, for Defendants and Appellants.

Thomas C. Lynch, Attorney General, William E. James Assistant Attorney General, and Bradley A. Stoutt, Deputy Attorney General, for Plaintiff and Respondent.

KAUS, P. J.—Defendants Eaker and Gallup were jointly charged and tried. The information alleged (count II) an

armed robbery on October 3, 1965, and a like crime on October 16, 1965 (count I). Gallup was convicted on both counts, Eaker only on count I.

The details of the two crimes need only be outlined, since the sufficiency of the evidence is not in dispute.

On October 3, 1965, three men, wearing ladies' stockings over their heads, entered a restaurant called "Chris and Pitts" at 1:10 a.m. One Voitier, a cook, recognized defendant Gallup with whom he had worked in the past as being one of the men. Gallup did not carry a weapon, but one of his companions was armed with a pistol and the other with a rifle. A key to the safe was obtained from a waitress and a large sum of money was taken. The man carrying the rifle had long blond hair. Voitier was unable to identify Eaker as that person.

On October 16, 1965, at about 2:20 a.m. two men, each wearing his blond hair long, entered the Kopy Kat bar. They were wearing stocking masks and carrying pistols. Several persons were present. A robbery ensued. Various witnesses identified both defendants at a later lineup and at the trial.[1]

The points urged on appeal center entirely on the facts surrounding the arrest of both defendants and the ensuing seizure of incriminating evidence.

The arrests took place at Gallup's apartment on October 20, 1965, four days after the second holdup. Officer Sheldon of the Los Angeles Police Department, attached to the forgery detail, went to that apartment for the purpose of executing an arrest warrant for Gallup. The validity of the warrant and the right of the officer to execute it in a proper manner are not questioned. The warrant was based on a complaint that Gallup had burglarized the garage of one Schellert on September 22, in which burglary he had obtained about eight credit cards.

Before Sheldon left for Gallup's apartment he had heard about the robbery at "Chris and Pitts" and Sergeant Long had told him that Gallup was wanted for investigation in connection with that robbery. He gave him a description of the other participants[2] in the robbery and told him that Gallup might be armed. This participant was described to him

---

[1]One witness, Larry Bell, was not too certain of his identification of Gallup. "I identified Mr. Gallup as a possible and Mr. Eaker as definitely being the one."

[2]As Officer Sheldon remembered at the trial, Sergeant Long only mentioned one other participant.

as being about the same build, height and age as Gallup. Both were said to have blond hair. Sheldon had seen a picture of Gallup.

When Sheldon arrived at the apartment house he talked to the landlady. She confirmed that Gallup lived in the apartment house. She said he was home and that he was with another "fellow." Gallup's companion was described by her as a blond boy with long hair about Gallup's age. At Sheldon's request she gave him a key to the apartment.

As Sheldon approached the apartment he saw a man who later turned out to be Eaker. Sheldon, however, apparently thought that it might be Gallup. He yelled at Eaker: "I am a police officer. Stay where you are." Eaker went back into the apartment and slammed the door. Sheldon immediately forced the door and entered the apartment in the company of his partner, Officer Tutich. Eaker was observed behind the door, Gallup was running for the bedroom. Both were placed under arrest. The premises were searched and one of the credit cards taken in the Schellert burglary was found. The search also turned up a loaded pistol which was found inside of a valise. A rifle was found in a closet. Both defendants were advised of their constitutional rights. Eaker said that he did not know who owned the valise. When shown the gun he said that he had handled it in the past. To the best of his recollection he had borrowed it from a friend for target practice. Gallup was asked about the rifle. He said that he had borrowed it for target practice. "He said that they had both been out target practicing. . . ."[3]

The statements were admitted against the respective declarants only.

The pistol and the rifle were identified by eyewitnesses.

On appeal it is claimed that each defendant was illegally arrested and that prejudicial error results from the admission of the fruits of the arrest. We disagree. ▮ As far as Gallup is concerned the only claim of illegality relates to the

---

[3]Since the trial took place before the Supreme Court's decision in *People* v. *Aranda,* 63 Cal.2d 518 [47 Cal.Rptr. 353, 407 P.2d 265], naturally no request that the trial court adopt one of the alternative procedures outlined therein was made, nor is the violation of the *Aranda* rule assigned as error on appeal. *People* v. *Charles,* 66 Cal.2d 330 [57 Cal. Rptr. 745, 425 P.2d 545], the case which makes *Aranda* applicable to trials held before the date of that decision, also establishes that "failure to adhere to the *Aranda* procedure constitutes reversible error only if it causes prejudice." (*Ibid.,* p. 337.) In our opinion the error was nonprejudicial.

failure of the arresting officers to follow the procedure outlined in section 844 of the Penal Code.

It is well established that strict compliance with the command of that section is not required in a variety of situations. We agree with the Attorney General that the facts with which Officer Sheldon was confronted justified his failure to demand admittance and explain the purpose of his mission.

First, although the evidence indicates that there was no rear door to the apartment, it did have windows. The person whom Sheldon saw in the corridor might have been Gallup. When at that point Sheldon identified himself as a police officer, it became evident that that person did not wish to talk with policemen. An attempted escape was more than a mere possibility.

Second, it was entirely reasonable for the officer to believe that if he permitted any time to elapse before making the arrest, the suspect might arm himself.

Finally, it must be remembered that the officer was executing an arrest warrant for the Schellert burglary in which credit cards had been stolen. It was not at all unreasonable for him to fear destruction or successful secretion of the evidence of that crime if he complied with section 844 of the Penal Code.

These exceptions were all recognized in *People* v. *Maddox,* 46 Cal.2d 301 [294 P.2d 6] and have been applied in numerous later cases. (E.g., *People* v. *Carrillo,* 64 Cal.2d 387 [50 Cal.Rptr. 185, 412 P.2d 377].) No useful purpose would be served by lengthy citations, since counsel for defendant and the Attorney General do not differ in their views of the law. They merely disagree on the application of the law to the facts of this case.

Although the Attorney General presents a persuasive argument that Eaker's arrest was justified, we need not decide the point. As the trial court observed, Eaker's arrest, as such, yielded no evidence. (*People* v. *Valenti,* 49 Cal.2d 199 [31 P.2d 633].)[4]

Finally it is urged that the weapons were found as the result of an exploratory search. (*People* v. *Schaumloffel,*

[4]On appeal defendant's counsel urges that it did, in that it made Eaker available for lineup identification of which there was testimony. No objection to such evidence was made at the trial. Nor was it urged at the trial that Eaker's statement concerning the pistol was inadmissible on the ground that it was procured after an illegal arrest. (*Wong Sun* v. *United States,* 371 U.S. 471 [9 L.Ed.2d 441, 83 S.Ct. 407].)

53 Cal.2d 96 [346 P.2d 393] and *People* v. *Mills,* 148 Cal.App. 2d 392 [306 P.2d 1005].)

The prosecution's evidence by which it was attempted to justify the arrest and search was presented in a somewhat unusual manner. The witness was Officer Sheldon. On several occasions the prosecutor finished his direct examination, the officer was cross-examined and objections were argued. When the objections seemed plausible on the then state of the record the officer was put back on the stand for more direct testimony, further cross-examination and so on. There was some substance to defense counsel's complaints below that every time he pointed out a gap in the People's case the officer was put on the stand to fill it. However the matter went to mere courtroom etiquette and credibility and appointed counsel on appeal wisely does not pursue it.

During Officer Sheldon's first cross-examination, when the facts concerning the Schellert burglary had not been explored, Eaker's counsel, more or less out of the blue, asked: "Then you conducted a general search of the apartment?" The answer was: "Yes, sir." Counsel asked no further questions. After two more rounds of direct and cross-examination of the officer, he was finally dispatched to his station so that he could refresh his recollection concerning the investigation of the Schellert burglary. This having been accomplished he returned to the stand. After some questions by the prosecutor, the following occurred: "THE COURT: Burglary of a residence? THE WITNESS: Garage burglary, to the best of my recollection, out of an automobile. THE COURT: And other credit cards were taken? THE WITNESS: Yes. THE COURT: Some of which had not been recovered at Sears? THE WITNESS: Right. I recovered one other one at Mr. Gallup's residence at the time of his arrest. THE COURT: *Was this the partial purpose of your search?* THE WITNESS: Yes, sir. That is correct." (Italics added.)

Undoubtedly the matter was ineptly handled by the prosecutor. The vital question was asked by the court and it was leading. There was, however, no objection.

The problem of the applicability of *People* v. *Schaumloffel,* 53 Cal.2d 96 [346 P.2d 393] and *People* v. *Mills,* 148 Cal.App. 2d 392 [306 P.2d 1005] to a particular search which turns up evidence of a crime other than the one for which the arrest is made is often a knotty one. (See also *Yonchar* v. *Superior Court,* 193 Cal.App.2d 135 [14 Cal.Rptr. 93].) It cannot be solved by describing the action of the police as a "rummaging

through" or "ransacking" of the premises. Such a characterization only implies a prejudgment that the search was illegal.

"In order to be incident to an arrest a search must also be limited to the premises where the arrest is made, have a definite object, and be reasonable in scope." (*People* v. *Cockrell*, 63 Cal.2d 659, 667 [47 Cal.Rptr. 788, 408 P.2d 116].) Here there can be no reasonable objection to the scope of or the area covered by the search. Nor can it be said that the arrest on the burglary charge was a pretext for a search of evidence of other crimes. (*Hood* v. *Superior Court*, 220 Cal. App.2d 242, 247 [33 Cal.Rptr. 782]; *People* v. *Wilson*, 145 Cal.App.2d 1, 5 [301 P.2d 974]; cf. *People* v. *Haven*, 59 Cal.2d 713, 719 [31 Cal.Rptr. 47, 381 P.2d 927]; *People* v. *Miller*, 193 Cal.App.2d 838, 843 [14 Cal.Rptr. 704].)

The characteristic feature of *Schaumloffel* and *Mills* is that in each case it was held that the sole motive of the search was the discovery of evidence of other crimes.[5] This appears more clearly in *Mills*, where the court held that before the search started one Hull, a police officer, "had in his possession all the knowledge and evidence he needed to make a case" on the charge on which Mills was arrested. (*Ibid.*, p. 396.) "The search was wholly exploratory, a quest for evidence of other crimes." (*Ibid.*, p. 399.)

On its facts, *Schaumloffel* does not fit too comfortably in the *Mills'* mold, because there the officer who conducted the search testified that he was looking for evidence of other crimes because such evidence would corroborate the crimes for which defendant was arrested. We must assume that the court discounted this statement on the unarticulated and now no longer valid premise that a search for "mere evidence" was also illegal. (*Warden* v. *Hayden*, 387 U.S. 294 [18 L.Ed.2d 782, 87 S.Ct. 1642] overruling *Gouled* v. *United States*, 255 U.S. 298 [65 L.Ed. 647, 41 S.Ct. 261]; *People* v. *Thayer*, 63 Cal.2d 635 [47 Cal.Rptr. 780, 408 P.2d 108].)

Thus, stripped of the then impermissible desire to search for and seize "mere evidence," it appears that in *Schaumloffel* too the sole motivation of the search was the hope of finding evidence of other crimes.

Neither *Schaumloffel* nor *Mills* involved a search which was, in part at least, motivated by a desire to find evidence

---

[5]This is the interpretation of *Mills* by its author; see *People* v. *Jackson*, 198 Cal.App.2d 698, 702 [18 Cal.Rptr. 214], a case filed some time after *Schaumloffel*.

material to the crime for which the arrest is made. (Cf. *People* v. *Ghimenti*, 232 Cal.App.2d 76 [42 Cal.Rptr. 504].)

Officer Sheldon did testify to such a partial motivation, the trial court believed him and we must accept its implied finding.

The judgments are affirmed.

Hufstedler, J., and Stephens, J., concurred.

The petition of appellant Eaker for a hearing by the Supreme Court was denied November 8, 1967.