[L. A. No. 29654. In Bank. Nov. 12, 1969.]

ROBERT LEE SKELTON, Petitioner, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

146

**COUNSEL**

Geragos & Part and Paul J. Geragos for Petitioner.

No appearance for Respondent.

Cecil Hicks, District Attorney, and Michael R. Capizzi, Deputy District Attorney, for Real Party in Interest.

**OPINION**

**SULLIVAN, J.**—Petitioner, Robert L. Skelton, was charged by information in the respondent court with three counts of receiving stolen property (Pen. Code, § 496) and with one count of possession of a dangerous drug without a prescription (Health & Saf. Code, § 11910). Pursuant to Penal Code section 1538.5,[1] petitioner moved to suppress certain evidence

[1] Hereafter, unless otherwise indicated, all section references are to the Penal Code.

alleged to have been unlawfully seized and the respondent court denied this motion. He now seeks a writ of mandate commanding respondent court to annul its order and to grant his motion to suppress. (§ 1538.5, subd. (i).) We issued an alternative writ of mandate. The People, as real party in interest, have made a return thereto. (Cal. Rules of Court, rule 56 (c).)

The relevant facts, for the most part, are not in dispute. On December 12, 1968, a search warrant was issued to Officer Douglas Geisler of the La Palma Police Department by a judge of the Superior Court of Orange County authorizing the search of petitioner's residence in the City of Los Alamitos. The warrant was directed to the discovery of four items of stolen property: a combination engagement-wedding ring; a decorative carving set; a set of plastic dominoes; and a set of engraved silverware.

About 11:20 p.m. on December 12, Officer Geisler, accompanied by five other officers, went to petitioner's residence and served the warrant on petitioner who answered the door. The six officers then entered the house and commenced a search for the four items of stolen property listed in the warrant. After about 20 minutes one of the officers discovered the set of dominoes on a shelf above a window in the dining room. Officer Geisler thereupon placed petitioner and his wife under arrest and directed the officers to continue their quest.

During the following two hours the police conducted what appears to have been a thorough search of the Skelton residence. Although the testimony of Officer Geisler at the preliminary hearing[2] was ambiguous,[3]

---

[2]By stipulation of the parties the motion to suppress was submitted on the transcript of the preliminary hearing before the magistrate.

[3]On cross-examination Officer Geisler testified as follows: "BY MR. GERAGOS [defendant's counsel]: Q. When you went to that location, did you have with you burglary reports of other crimes that had been reported? A. Yes, sir, I did. Q. And did the other officers also have reports of property taken in burglaries? A. Yes, they did. Q. And those were reports that described property other than what was described in the Search Warrant; is that right? A. That is correct. Q. And it was other than property that was described in the Affidavit supporting the Search Warrant; is that right? A. That is correct. Q. Did you take those reports along with you for the purpose of being able to identify property that you would find in the premises by means of comparing with the description contained in those reports? MR. WRIGHT: It is irrelevant. THE COURT: Overruled. THE WITNESS: That is correct. BY MR. GERAGOS: Q. Did you do that on this occasion? A. Yes, sir, we did. Q. And did you search the house completely in an attempt to find the property that matched the property in those reports? A. After identifying the box of dominoes, we did make a complete search of the house to see if there was any other contraband in the house. Q. So you did search every part of the house for the purpose of finding property that you believed might be the subject of these various crime reports that you had; is that right? A. That's only partially right. I continued to search and had the search conducted in an attempt to find some of these other items and also comparing any items that may have fit the description of other burglaries."

the search seems to have been motivated not simply by a desire to locate the three remaining items specified in the warrant but also by the hope of discovering property listed as stolen on police burglary reports which the officers had brought with them. In any event, the following items not included in the warrant were uncovered during the course of the search and were seized: five women's rings; four women's watches; one man's watch; two sets of silverware;[4] and a bottle of capsules subsequently determined to be secobarbital.

Petitioner's motion to suppress rested upon two grounds: First, that the search warrant was invalid because the affidavits for the warrant did not set forth facts sufficient to establish probable cause for its issuance; and second, that some of the property seized was obtained by the police as the result of what was, in fact, a general, "exploratory" search of a kind condemned by this court in *Aday* v. *Superior Court* (1961) 55 Cal.2d 789[5] [13 Cal.Rptr. 415, 362 P.2d 47]. We will first consider petitioner's contention that the warrant was issued without probable cause and was therefore constitutionally deficient for, if this is so, none of the items seized during the search which it authorized may be admitted.

The basic principles governing searches made pursuant to a warrant are clear and need no extended discussion here. The starting point for any analysis must be the words of the Fourth Amendment which provides, in relevant part, that ". . . no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized." The fundamental rights of the Fourth Amendment are guaranteed against invasion by the states by the Fourteenth Amendment (*Ker* v. *California* (1963) 374 U.S. 23, 30-33 [10 L.Ed.2d 726, 735-737, 83 S.Ct. 1623]) and the standard for determining the existence *vel non* of probable cause is the same under the Fourth and Fourteenth Amendments. (*Aguilar* v. *Texas* (1964) 378 U.S. 108, 110 [12 L.Ed.2d 723, 725, 48 S.Ct. 1509].)

As the court stated in *Aguilar*, "An evaluation of the constitutionality of

---

[4]There is also some confusion as to whether either of the two sets seized corresponds to that described in the warrant. The warrant identifies the set as containing knives, forks and spoons, "the knives with gold handles." One set seized was apparently completely gold colored, the other (which is the set introduced at the preliminary hearing) is a set of Wallace sterling alleged to be the one named in the warrant but there was no testimony as to the color of the knife handles.

[5]Petitioner's position is not completely clear. He states that he moved to suppress those items which were introduced against him over his objection at the preliminary hearing. The items so introduced were comprised of the following: (1) The set of plastic dominoes; (2) the set of Wallace silverware; (3) two rings and a gold watch. Testimony regarding the discovery of the capsules and their contraband nature was received by stipulation. It is uncertain whether his motion was directed at all the items seized.

a search warrant should begin with the rule that 'the informed and deliberate determinations of magistrates empowered to issue warrants . . . are to be preferred over the hurried action of officers . . . . who may happen to make arrests.' " ■ Thus when a search is based on a warrant (and therefore on a magistrate's rather than a police officer's determination of probable cause) the reviewing courts "will accept evidence of a less 'judicially competent or persuasive character than would have justified an officer in acting on his own without a warrant.' . . . [*Jones* v. *United States,* 362 U.S. 257, 270 [4 L.Ed.2d 697, 708, 80 S.Ct. 725, 736, 78 A.L.R.2d 233]] and will sustain the judicial determination so long as 'there was substantial basis for [the magistrate] to conclude . . .' " that the contraband was probably present. (*Aguilar* v. *Texas, supra,* 378 U.S. at p. 111 [12 L.Ed.2d at p. 726].) ■ In order for a search warrant to satisfy the constitutional requirement of probable cause, the affidavits upon which it is based must contain competent evidence "sufficient to support the finding of the magistrate." (*People* v. *Scoma* (1969) 71 Cal.2d 332, 336 [78 Cal.Rptr. 491, 455 P.2d 419].) ■ In determining the sufficiency of an affidavit for the issuance of a search warrant the test of probable cause is approximately the same as that applicable to an arrest without a warrant, a commitment by a magistrate or an indictment by a grand jury (*People* v. *Stout* (1967) 66 Cal.2d 184, 193 [57 Cal.Rptr. 152, 424 P.2d 704]; *Williams* v. *Justice Court* (1964) 230 Cal.App.2d 87, 94 [40 Cal.Rptr. 724]), namely, whether the facts contained in the affidavit are such as would lead a man of ordinary caution or prudence to believe, and conscientiously to entertain, a strong suspicion of the guilt of the accused. (*People* v. *Govea* (1965) 235 Cal.App.2d 285, 296 [45 Cal.Rptr. 253].) While it is clear that probable cause does not require as strong evidence as is needed to convict (*United States* v. *Ventresca* (1964) 380 U.S. 102, 107 [13 L.Ed.2d 684, 688, 85 S.Ct. 741]), the exact quantum of evidence which will constitute probable cause must be judged in light of the facts and circumstances of each case. ■ The rules of appellate review recognize the impracticality of establishing a precise calculus by which the existence of probable cause is to be determined: the warrant can be upset only if the affidavit fails as a matter of law to set forth sufficient competent evidence supportive of the magistrate's finding of probable cause, since it is the function of the trier of fact, not the reviewing court, to appraise and weigh evidence when presented by affidavit as well as when presented by oral testimony. (*People* v. *Govea, supra,* at p. 297; *Arata* v. *Superior Court* (1957) 153 Cal.App.2d 767, 772, fn. [315 P.2d 473] *overruled on other grounds; People* v. *Butler* (1966) 64 Cal.2d 842, 845 [52 Cal.Rptr. 4, 415 P.2d 819].)

In the instant case, two affidavits were presented to the superior court judge who issued the warrant. The first, and more significant, was that of Ronald Boyd, dated December 12, 1968. It stated in substance as follows: That affiant was 17 years old and was then incarcerated in Orange County Juvenile Hall on burglary charges; that he had known the petitioner, Skelton, for approximately four years; that during 1967 he had committed two or three residential burglaries and several thefts from stores and delivered the proceeds to petitioner in return for money; that from December 1967 until September 1968 he had been incarcerated in the California Youth Authority and that after his release, until his arrest in December 1968, he had burglarized 30 to 35 residences in various southern California communities and in almost all instances had delivered the proceeds to Skelton at the latter's residence or place of business; and that Skelton paid cash (here Boyd related specific prices paid for certain named items) for these goods and to affiant's knowledge had disposed of most of the articles within one day thereafter since he did not see them on subsequent visits to petitioner's home.

Boyd's affidavit further stated that affiant "has observed the following stolen property" in petitioner's residence: (1) a diamond ring taken by affiant during a burglary three weeks earlier which affiant observed being worn by petitioner's wife on several occasions, the last occasion being December 8, 1968; (2) a set of silverware of specified description taken by affiant during a burglary six weeks earlier and given to petitioner as a gift, which affiant saw in petitioner's kitchen and which he observed being used by petitioner and his wife in their residence on several occasions; (3) a set of dominoes, taken by affiant during a burglary two weeks earlier which "although your affiant has not observed these items in Mr. Skelton's residence he told Mr. Skelton to keep them for him"; and (4) a carving set in an oval case, taken by affiant during the burglary three weeks earlier in which he took the diamond ring, given on the evening of the burglary to petitioner, who said he would keep it in his garage in the rear of his premises.

The second affidavit was that of Officer Geisler. In substance it stated that he had arrested Boyd in the course of investigating a series of residential burglaries; that Boyd had admitted committing burglaries of certain residences and taking certain property; that police department reports indicated that burglaries had occurred at these residences and that items of property which Boyd admitted taking (including the diamond ring, the domino set, and the carving set) were in fact missing. Officer Geisler's affidavit also confirmed that Boyd's fingerprints had been discovered and identified at the residences which Boyd had admitted burglarizing.

Both affidavits were subscribed and sworn to in the presence of the superior court judge. Thus not merely Officer Geisler, but the affiant Boyd, upon whose information the warrant principally rests, personally appeared

before the issuing magistrate who consequently had the full opportunity to observe his appearance and demeanor and to question him regarding any relevant matter if he considered this necessary to assure himself of the affiant's credibility. As we have said, on the presentation of these affidavits, the judge issued the search warrant.

Petitioner contends that these affidavits failed to provide a sufficient basis for the issuance of the warrant. He argues that Boyd's affidavit is deficient because, insofar as it alleges that stolen goods were delivered to Skelton or were recently observed on his premises, it is not corroborated. Petitioner relies on *Aguilar* v. *Texas, supra,* 378 U.S. 108 and *Spinelli* v. *United States* (1969) 393 U.S. 410 [21 L.Ed.2d 637, 89 S.Ct. 584], to support his contention that the lack of complete corroboration of Boyd's affidavit precludes it from establishing probable cause.

Petitioner misconceives the holdings of those cases. Neither *Aguilar* and *Spinelli* nor any case decided by this court has required "corroboration" or independent evidence of the reliability of information contained in an affidavit in the context of this case. In *Aguilar,* a search warrant issued upon an affidavit of police officers stating only that they had "received reliable information from a credible person and do believe" that narcotics were located on the described premises. The Supreme Court held the affidavit inadequate for two reasons: First, it failed to set forth any of the "underlying circumstances" from which the informant concluded that the narcotics were where he claimed they were; and second, the affiant-officers did not provide any of the reasons why they considered the informer "credible" or his information "reliable."

Following *Aguilar,* we have held that for an affidavit based on an informant's *hearsay* statement to be legally sufficient to support the issuance of a warrant, two requirements must be met: (1) the affidavit must allege the informant's statement in language that is factual rather than conclusionary and must establish that he spoke with personal knowledge of the matters contained in the affidavit; and (2) the affidavit must contain some underlying factual information from which the magistrate can reasonably conclude that the informant was credible or his information was reliable. (*People* v. *Hamilton* (1969) 71 Cal.2d 176, 180 [77 Cal.Rptr. 785, 454 P.2d 681]; *People* v. *Scoma, supra,* 71 Cal.2d 332, 338 [78 Cal.Rptr. 491, 455 P.2d 419].) Unless the rule of *Aguilar* is to be extended beyond its rationale, these cases have no application here.

Boyd's affidavit in the instant case contains no hearsay report of an informant, identified or otherwise. Rather, the sworn statement of the "informer" is embodied in the affidavit itself. Concededly, there is no

corroboration of the crucial allegations in Boyd's affidavit provided by that of Officer Geisler. Were all of the information contained in Boyd's affidavit incorporated as hearsay within Geisler's affidavit, the latter might well fall before the "second prong" of *Aguilar*. But that is not this case.

The entire thrust of *Aguilar* and the cases following it is to insure that the actual ability of the magistrate to make an independent judgment of the existence or not of probable cause remains unimpaired. The rule that the factual grounds for believing the hearsay informer be communicated to the magistrate is mandatory if probable cause is, in fact, to be determined "by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime." (*Johnson* v. *United States* (1948) 333 U.S. 10, 14 [92 L.Ed. 436, 440, 68 S.Ct. 367].) Here, however, the critical affidavit is not based on unsworn hearsay, but upon statements made under oath, whose origin is clearly in the personal knowledge and observation of the affiant. Certainly if the affiant were an undercover police officer, there would be no difficulty in upholding the warrant.[6] Is it reasonable to require that a contrary result be reached in every case in which the affiant is not an "investigator" but, for example, as in this case, a suspected accomplice?

Such an absolute rule does not commend itself to us as either reasonable or commanded by the Fourth Amendment. The policy behind the warrant procedure is, as we mentioned above, to encourage that the magistrate rather than the police make the decision as to the existence of probable cause before the privacy of the citizen is invaded. His resolution of the issue is to be sustained by reviewing courts as long as there was a "substantial basis" for his conclusion that the legitimate objects of the search were "probably present" on the specified premises. (See *Jones* v. *United States, supra,* 362 U.S. at p. 271 [4 L.Ed.2d at p. 708].) To hold that the determination was improper in this case would mean that an inculpatory statement made before a magistrate under oath by one under a charge of burglary supported by his own admission as well as by independent evidence, which statement relates in detail the location of the fruits of his crime, *cannot* as a matter of law, be believed by the magistrate.

Such a holding, of course, would be contrary to the rule that in determining probable cause for purposes of indictment or commitment the credibility of the witnesses is for the determination of the grand jury and the

---

[6]See, for example, Mr. Justice White's concurring opinion in *Spinelli* v. *United States, supra,* 393 U.S. at p. 423 [21 L.Ed.2d at p. 647]: "An investigator's affidavit that he has seen gambling equipment being moved into a house at a specified address will support the issuance of a search warrant. The oath affirms the honesty of the statement and negatives the lie or imagination. Personal observation attests to the facts asserted. . . ."

magistrate, respectively. (*De Mond* v. *Superior Court* (1962) 57 Cal.2d 340 [19 Cal.Rptr. 313, 368 P.2d 865].) ■ "The credibility of witnesses at the preliminary examination, of course, is a question of fact within the province of the committing magistrate to determine, and neither the superior court nor an appellate court may substitute its judgment as to such question for that of the magistrate." (*De Mond* v. *Superior Court, supra,* at p. 345; see also *People* v. *Crosby* (1962) 58 Cal.2d 713, 730 [25 Cal.Rptr. 847, 375 P.2d 839]; *Perry* v. *Superior Court* (1962) 57 Cal.2d 276, 283 [19 Cal.Rptr. 1, 368 P.2d 529].) No persuasive distinction between the role or capacity of the magistrate in these settings has been suggested. ■ In the absence of such a suggestion or of any circumstances appearing in the record which should have alerted the magistrate to a likelihood of deliberate mendacity on the affiant's part, we decline to hold that the warrant was issued without probable cause.[7]

■ We turn now to petitioner's second contention, namely, that the conduct of the officers constituted what he terms an "exploratory" search. Petitioner does not define this term, but his objection is reasonably clear. He suggests that the warrant, which directed a search for, and seizure of, four specific items of stolen property, was simply a pretext to gain entry to his house, a facade behind whose authority the officers intended to conduct an extensive search of his premises to discover, not solely the four listed items, but also other stolen property which they suspected might be located there. This interpretation of the events of December 12, 1968, is not patently incredible. Were there more substantial evidence of such purpose or conduct supporting petitioner's claim we might find it necessary to decide whether the police officers' activities were so unreasonable as to require the exclusion of the evidence.[8] In the absence of such evidence,

---

[7]We rest our holding squarely on the rule that it is for the magistrate to determine the credibility of witnesses and affiants providing information under oath. However, the following factors may be relevant in an assessment of the totality of circumstances confronting the magistrate in the instant case. (1) The information contained in Boyd's affidavit was not a bare statement that he had delivered goods to Skelton, but a detailed recitation of the circumstances surrounding such deliveries including the addresses of Skelton's residence and office, the types of goods delivered, and some of the dates on which the deliveries occurred. (2) The description of the items allegedly observed on the premises to be searched was made with particularity. (3) The information contained in the affidavit was not simply an accusation against petitioner as either individually guilty of a crime or as implicated in crime with the affiant. Rather, it was information relating to the location of stolen goods which, if discovered, could be used as evidence against the affiant himself. Thus there is, in the nature of the statement, an internal guaranty of reliability. That similar statements have been considered of a peculiarly trustworthy nature is demonstrated by our holding in *People* v. *Spriggs* (1964) 60 Cal.2d 868 [36 Cal.Rptr. 841, 389 P.2d 377], that declarations against *penal* interest are of sufficient reliability to come within the rationale of the "Declaration against Interest" exception to the hearsay rule.

[8]Just as an arrest may not be used as a pretext to conduct a general search of a person's premises for incriminating evidence (see *People* v. *Roberts* (1956) 47 Cal.2d

however, we proceed on the entirely reasonable assumption that the officers were engaged in a good faith effort to execute the warrant and discover the named property when they uncovered and confiscated the two rings, the watch, and the bottle of secobarbital capsules.[9] Under this assumption it is well settled that, in circumstances such as those in this case, the property seized, even though not mentioned in the warrant which authorized the search, is admissible against petitioner.

■ We are mindful of the general rule that when a search is made pursuant to a warrant, the search and seizure are limited by the terms of the warrant. Thus only the premises described in the warrant may be searched and only the property described in the warrant may be seized. The United States Supreme Court explained the reasons for the rule in *Marron* v. *United States* (1927) 275 U.S. 192 [72 L.Ed. 231, 48 S.Ct. 74]: "The requirement that warrants shall particularly describe the things to be seized makes general searches under them impossible and prevents the seizure of one thing under a warrant describing another. . . . nothing is left to the discretion of the officer executing the warrant." (275 U.S. at p. 196 [72 L.Ed. at p. 237].) However, the rule is not without exceptions and in the case at bench we apprehend two well-established distinctions which validate the seizure of the property not named in the warrant.

First, under the then prevailing constitutional doctrine, if a valid arrest is made,[10] a search may be conducted as incident to the arrest, and may extend beyond the scope of the warrant's authorization. Although the United States Supreme Court has, subsequent to the date on which the search here in question occurred, substantially curtailed the permissible

---

374, 378 [303 P.2d 721]), where the right to conduct a search is obtained ostensibly for one purpose, it may not be used in reality for another. However, where the search was conducted pursuant to a warrant validly issued, the burden should be on the one attacking the search to show that the motive of the officers was improper and that their conduct was unreasonable in light of their unquestionable authority to conduct a search of whatever intensiveness was required. Moreover, even were we to be persuaded that the search in this case was "exploratory," we would not therefore be required to hold, as petitioner apparently urges, that *all* property seized by the officers is automatically excludable. Certainly the fact that officers act unreasonably in searching and seizing items beyond the scope of a valid warrant should not alone affect the admissible status of items seized within the scope of the warrant.

[9]As we noted, *ante,* at footnote 4, the record is unclear as to whether the set of Wallace silverware discovered in the kitchen drawer was the set of silverware referred to by Boyd in his affidavit and listed in the warrant as having "knives with gold handles." In light of our decision that even those items which clearly were not listed in the warrant (the pills, the watch, and the two rings, neither of which were asserted to be the combination engagement-wedding ring listed in the warrant) are admissible, this factual issue is irrelevant.

[10]No issue is raised as to the propriety of petitioner's arrest immediately after the discovery of the set of dominoes, one of the items listed in the search warrant. In view of our previous cases, no serious argument could be advanced that the officers lacked the degree of probable cause required to justify an arrest without a warrant.

scope of searches made without warrants sought to be justified on the ground that they are incident to arrest (*Chimel* v. *California* (1969) 395 U.S. 752, 768 [23 L.Ed.2d 685, 696, 89 S.Ct. 2034]), we have decided in *People* v. *Edwards* (1969) 71 Cal.2d 1096 [80 Cal.Rptr. 633, 458 P.2d 713], that the rule established in *Chimel* is not to be applied retroactively. ▮ Hence the legality of this search, insofar as it depends upon the doctrine of search incident to arrest, must be determined by the standards prevailing before the decision in *Chimel*.[11]

Under pre-*Chimel* law, where a lawful arrest is made, a reasonable search incident thereto is likewise lawful (*Ker* v. *California, supra,* 374 U.S. 23, 41 [10 L.Ed.2d 726, 742]; *People* v. *Cockrell* (1965) 63 Cal.2d 659, 666-667 [47 Cal.Rptr. 788, 408 P.2d 116]; *People* v. *Chimel* (1968) 68 Cal.2d 436, 442 [67 Cal.Rptr. 421, 439 P.2d 333]), and evidence discovered during such search is admissible even though it relates to a crime different from the one for which the arrest was made. (See *People* v. *Robinson* (1964) 62 Cal.2d 889, 894-896 [44 Cal.Rptr. 762, 402 P.2d 834]; *People* v. *Brooks* (1965) 234 Cal.App.2d 662, 667 [44 Cal.Rptr. 661].)

The pre-*Chimel* standards of reasonableness were broadly drawn. Thus, while the search was required to be approximately contemporaneous with the arrest, to be limited to the premises where the arrest was made, to have a definite object, and to be reasonable in scope (*People* v. *Cockrell, supra,* 63 Cal.2d at p. 667; *People* v. *Cruz* (1964) 61 Cal.2d 861, 866 [40 Cal.Rptr. 841, 395 P.2d 889]), each of these limitations had rather elastic properties. *People* v. *Harris* (1965) 62 Cal.2d 681 [43 Cal.Rptr. 833, 401 P.2d 225] approved a search of defendant's car after his arrest within his apartment; *People* v. *Schader* (1965) 62 Cal.2d 716 [44 Cal.Rptr. 193, 401 P.2d 665] endorsed a search of defendant's car even though the arrest occurred when he was outside the car; *People* v. *Chimel, supra,* sanctioned a search of the defendant's entire home and unattached garage following an arrest within the house. Since, upon the theory now being considered, the search in the case before us was limited to the premises on which the arrest occurred, was initiated immediately after the arrest was made, was motivated at least in part by a desire to discover evidence relevant to the crime for which the petitioner was arrested and was confined to the seizure of

---

[11]Judged by the standards set out in *Chimel*, it seems clear that the search conducted in this case was unreasonable if its only authority was the preceding arrest. It went far beyond the petitioner's person and the area from within which he could have obtained either a weapon or evidentiary material. It is not clear from the record of the preliminary hearing in which room petitioner was arrested. The items introduced, however, were discovered only as a result of a search which required the opening of desk drawers, cabinets, closed boxes, closets, etc., in several rooms. This is the type of search which *Chimel* holds must be made "only under the authority of a search warrant." (395 U.S. at p. 763 [23 L.Ed.2d at p. 694].)

material the officers in good faith believed to be contraband, the search of which petitioner complains as being "exploratory" was in fact lawful as being incident to his lawful arrest under the then-applicable constitutional standards.

The People attempt to defend the introduction of the evidence not listed in the warrant on the additional theory that its seizure falls within the "plain sight rule," the second exception to the principle that only those articles denominated in the warrant may be seized. Briefly stated, that rule provides that if officers are legally on the premises and observe what they recognize as contraband "in plain sight" they may seize it whether or not they possess a warrant and whether or not the warrant includes the contraband observed. The doctrinal rationale, to the extent that one is necessary, has been that no "search" has taken place since the articles were in plain view. (See for example: *People* v. *Superior Court* (1968) 266 Cal.App.2d 685, 689-690 [72 Cal.Rptr. 261]; *People* v. *Carr* (1966) 244 Cal.App.2d 99, 104 [52 Cal.Rptr. 813]; *People* v. *Davis* (1966) 240 Cal.App.2d 496, 500 [49 Cal.Rptr. 663].) Since a search quite obviously did occur in this case, we do not believe that the plain sight rule, as commonly articulated, can be made applicable here. However, we are inclined to the view that the result argued for by the People is sound. ▉ We would formulate what seems to us the rule that has been applied without express articulation, in many similar cases, thus: When officers, in the course of a bona fide effort to execute a valid search warrant, discover articles which, although not included in the warrant, are reasonably indentifiable as contraband, they may seize them whether they are initially in plain sight or come into plain sight subsequently, as a result of the officers' efforts.

Several cases have reached this result without explicitly stating the rule as we have or without making any adjustment in the application of the plain sight rule to accommodate the altered circumstances in which the contraband is discovered. (*People* v. *Layne* (1965) 235 Cal.App.2d 188, 191 [45 Cal.Rptr. 110]; *People* v. *Shafer* (1960) 183 Cal.App.2d 127, 128-130 [6 Cal.Rptr. 594]; *People* v. *Ortiz* (1956) 147 Cal.App.2d 248, 251 [305 P.2d 145].) *Layne,* for example, simply states: "Although the warrant under which the officers acted authorized only a search for marijuana, their seizure of heroin discovered in the course of that search was proper and the evidence thus produced was not illegally obtained." (235 Cal.App.2d at p. 191.) When the cases have suggested any reason for this result, thay have most frequently relied on the permissive language in which this court expressed the plain sight rule in *People* v. *Roberts* (1956) 47 Cal.2d 374, 379 [303 P.2d 721], ". . . in the course of conducting a reasonable search they [the police officers] did not have to bind

themselves to what was in plain sight simply because it was disconnected with the purpose for which they entered."

We think this is a realistic balancing of the requirements of effective law enforcement and the necessity to protect the privacy of the citizen from unwarranted governmental intrusion. As we stated above, we think, that, *mutatis mutandis,* it should govern the outcome of this case. Here a warrant had been properly issued directing that a search be made of the entire premises occupied by petitioner. Since the warrant mandated a search for and seizure of several small and easily secreted items, the officers had the authority to conduct an intensive search of the entire house, looking into any places where they might reasonably expect such items to be hidden. With the issuance of this warrant, the judgment had already been made by a judicial officer to permit a serious invasion of petitioner's privacy. No legitimate interest is enhanced by imposing artificial restrictions on the reasonable conduct of officers executing the warrant. No purpose is subserved, other than that of an exquisite formalism, by requiring that when the officers discovered contraband[12] in the course of this search they return to the issuing magistrate and obtain a second warrant directing the seizure of the additional contraband.

Petitioner does not address himself to either of the rationales discussed above as justifications for the search. Rather, he relies generally upon what he suggests is the similarity of the search to that condemned as "wholly exploratory" in *People v. Mills* (1957) 148 Cal.App.2d 392, 399 [306 P.2d 1005]. In *Mills,* police officers arrested the defendant and conducted a search of his office, seizing between 500 and 1,000 documents. At the time of the arrest, the police possessed all the knowledge and evidence required to make a case on the charge for which Mills was arrested. The court held that the seized documents were inadmissible since the search which produced them was not directed to discovery of instrumentalities or evidence of the crime for which the defendant was arrested but for evidence of other crimes.

The defendants in *People v. Rogers* (1969) 270 Cal.App.2d 705 [75 Cal.Rptr. 919] and *People v. Gallup* (1967) 253 Cal.App.2d 922 [61 Cal.Rptr. 709], sought to rely on *Mills* and in each case the court held *Mills* inapplicable. The ground for their distinction of *Mills* is persuasive and, we

---

[12]Petitioner suggests that the fact that the officers brought burglary reports with them indicates that they intended to carry out a general exploratory search. In the absence of any substantial evidence as to the officers' motivation (it does not appear for example that they deliberately delayed looking for or discovering the items listed in the warrant), we are unwilling to speculate as to the existence of an improper intention on the part of the officers. That the officers brought burglary reports with them does not by itself compel any inference of impropriety.

think, applies as well to the case before us. *Gallup* noted that the characteristic feature of *Mills* is that the sole purpose of the search there was held to be the discovery of evidence of other crimes. *Mills* did not involve a search which was at least partially motivated by a desire to find evidence material to the crime for which the arrest was made. (253 Cal.App.2d 927, 928.) *Rogers* adopts the distinction recognized in *Gallup* and holds that *Mills* does not preclude a search for and seizure of evidence relevant to the charge for which the accused is arrested. (270 Cal.App.2d 705, at p. 710.)

 The officers in the case before us had obtained warrants authorizing a search whereas in *Mills, Gallup* and *Rogers* the sole justification for the search was the preceding arrest. Quite apart from this additional ground of authorization, there has been no showing that the *only* goal of the search of petitioner's premises was to discover evidence unrelated to the charge for which he was arrested. Petitioner's reliance on *Mills,* therefore, is misplaced.

The alternative writ of mandate is discharged; the petition for a peremptory writ of mandate is denied.

Traynor, C. J., McComb, J., Tobriner, J., Mosk, J., and Burke, J., concurred.

**PETERS, J.**—I concur.

I believe the search herein (see fn. 9) was illegal and in violation of the rule laid down in *Chimel* v. *California,* 395 U.S. 752 [23 L.Ed.2d 685, 89 S.Ct. 2034]. I further believe that *Chimel* should apply to pending cases. However, in *People* v. *Edwards,* 71 Cal.2d 1096 [80 Cal.Rptr. 633, 458 P.2d 713], the majority of this court ruled to the contrary. Under compulsion of the *Edwards* case I am compelled to follow the rule of that case.