[Civ. No. 43138. Second Dist., Div. Four. Apr. 8, 1974.]

FRED FIXLER et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

**COUNSEL**

Fleishman, McDaniel, Brown & Weston and David M. Brown for Petitioners.

No appearance for Respondent.

Joseph P. Busch, District Attorney, Harry B. Sondheim, Donald J. Kaplan and Thomas King Elden, Deputy District Attorneys, for Real Party in Interest.

**OPINION**

**KINGSLEY, J.** — Petitioners have been indicted for pandering and for conspiracy to commit pandering. They duly moved, under section 1538.5 of the Penal Code, for an order suppressing certain physical evidence and for its return,[1] and for the suppression of the testimony of two witnesses, which testimony they alleged was the fruit of the unlawful searches and seizures involved in the first branch of their motion. The trial court, after

---

[1] Nothing in the record before us would support an order for "return" of the physical items herein involved. Petitioner Utterback is a photographer and defendant Fixler is a "photographic editor." The indictment against them is based on the theory that Utterback posed models and took pictures under the direction of Fixler. This does not show that the resulting pictures, much less the magazines and business records, were their property. Under California law, they may invoke any violation of the constitutional rights of their employers. But the limit of their right is the suppression, in the case against them, of illegally acquired evidence; only the employer-owners may seek return of the items.

an extended hearing, denied the motion to suppress the physical evidence and did not rule on the motion to suppress the oral testimony.[2]

We issued our alternative writ of mandate. The matter has been briefed and argued. For the reasons set forth below, we conclude: (1) that some of the physical evidence was properly sought and seized; (2) that other physical evidence was illegally seized; and (3) that petitioners are entitled to a further hearing on the specific items to be suppressed and on their motion to suppress oral testimony.

## I

We dispose, first, of a collateral contention by petitioners. The evidence involved was seized during an investigation of the alleged publication and distribution of obscene pictures and magazines and the seizure was made on the theory that the items seized were obscene and constituted evidence of violations of section 311.2 of the Penal Code. As indicated above, petitioners are not now, and never have been, charged with violation of the obscenity statutes, but solely with pandering and conspiring to pander; so far as we are aware, nobody else has been charged with such a violation on the basis of the evidence herein involved.[3] The searches and seizures herein complained of were made in April and May of 1972; the indictments of petitioners were returned on July 20 and 21, 1972; the case has not yet been brought to trial.

Petitioners contend that the long delay in prosecuting them, and in not prosecuting them for the offenses contemplated at the time of seizure, entitles them to the relief sought. As a ground for granting a motion under section 1538.5 the contention is without merit. A search and seizure is valid or invalid depending on the situation existing at the time they are made. Just as an invalid search cannot be justified by later events, so a valid search does not become invalid by subsequent events. We know of no authority that requires a prosecuting officer to file criminal charges on the same theory as that held by the police in acquiring evidence.[4] Nor

---

[2]Since the trial court found that all of the physical evidence involved in the motion had been lawfully seized, the motion to suppress the oral testimony fell of its own weight; that part of the motion is revived by our holding that some of the physical evidence was illegally seized.

[3]We know, from other cases in this court, that an attempt to invoke the so-called "Red Light Abatement" law against some of the premises involved in this case is underway. Those cases involve persons other than the present petitioners; nothing we say or hold in this case is intended to determine the rights of any persons other than the present petitioners.

[4]Whether evidence legally acquired is relevant or material, and admissible, in a particular prosecution is not an issue on a 1538.5 motion.

is the delay in proceeding with the case, even if improper, a ground for a 1538.5 motion. If petitioners' right to a speedy trial has been infringed, their remedy is to seek dismissal of the indictments, not to suppress evidence.

## II

In 1972, the police arrested a burglar as he was leaving certain premises on Fulton Avenue in North Hollywood. His takings included a magazine called "Sexscope, Vol. 2, No. 3" and a mock-up of another magazine entitled "Sex Today, Vol. 1, No. 1." Sergeant Petroski, of the Los Angeles Police Department, presented that material, together with his affidavit reciting other information concerning the premises of Fulton Avenue, and obtained a search warrant (warrant No. 3580) authorizing a search of the Fulton Avenue premises and the seizure of 18 copies, each, of the magazine and the magazine represented by the mock-up,[5] together with: ". . . business records which include Pacific News Sales Reports, Oxford Bindery Schedules, London Press Invoices, London Press Job Orders, memos, job tickets, publication orders, magazine office sample cover lists, production schedule, jobs delivered, digest, London Press letters to Academy Press and Academy Press letters to London Press, regarding Sexscope Magazine, volume two, number three."

Execution of that warrant produced material indicating that the actual publication of the two magazines was being conducted from the premises of an organization known as "American Art Enterprises, Inc.," located on Lassen Street in Chatsworth, and that copies of the two magazines were stored at the Chatsworth address. Sergeant Petroski then secured a second warrant (No. 3589), authorizing a search of the Chatsworth premises and the seizure of: "A magazine titled 'Sex Today' Vol. 1 No. 1; a magazine titled 'Sexscope' Vol. 2 No. 3; all layouts, photos, negatives, plates, brown-line proofs, photostat copies, galey [sic] forms, flats, memoranda, purchase orders, price schedules, job orders, invoices, job tickets, transparencies, original art, distribution lists, shipping schedules and orders, notes or instructions specifically relating to the ordering, preparation and distribution of 'Sex Today' Vol. 1 No. 1 and 'Sexscope' Vol. 2 No. 3."

The Chatsworth premises proved to be a large warehouse, approximately

---

[5]The affidavit and warrant explain the need for 18 copies as follows: "[T]his being a sufficient number so that each member of the jury (14), Judge (1), Defense (1), Prosecution (1), and witness (1) will have a copy during the trial."

At oral argument, counsel for petitioners expressly disclaimed any objection to the taking of 18 copies of the various magazines if copies were properly seized at all.

300 x 500 feet in size, containing a large number of cartons. Although the cartons had some kind of code number marked on them, there was nothing to indicate to the officers which cartons contained the particular magazines named in warrant No. 3589. The officers began searching through the cartons and found (in all) numerous copies of 173 different magazines, each of which they regarded as being obscene. At the officers' request, two judges of the Los Angeles Municipal Court (neither being the judge who had issued the original two warrants) came to the warehouse, inspected the magazines found there, orally stated that they were obscene, and orally directed the seizure of 18 copies of each magazine,[6] together with about 30 cartons of business records relating to the 173 magazines.[7] Subsequently, on Sergeant Petroski's affidavit, warrants (Nos. 3589-B, 3676, 3677, 3714) were secured, purportedly validating the seizures made on the oral authority of the two judges.

(1) ■ We conclude that the search in execution of warrant No. 3580, and the seizure of the items then seized, and the search in execution of warrant No. 3589, and the seizure of the items described in that warrant, were valid insofar as they were directed to the two named magazines. The incriminating magazine, magazine mock-up and pictures, discovered on the arrested burglar, were shown to the magistrate; it is not here contended that his determination that they were obscene was in error. The affidavits involved are sufficient to meet the other tests for a valid warrant.

Since both warrants limited the business records to be seized to records relating to the two magazines specifically named in the warrant, we conclude that the trial court did not err in holding that the scope of the warrant was not overly broad.[8]

(2) The warrants obtained after the search and seizure of the 171 magazines not named in either warrant 3580 or 3589, and of business records relating to those 171 magazines, add nothing to the case at bench. As we

---

[6]There is some dispute in the record as to whether the final direction to seize the 171 additional magazines and records relating to them was given by both judges or only by one. The matter is not material, since the oral order would gain no greater effect if given in duplicate, or if some magazines were included in the order of one judge and some in an order of the other.

[7]Since, as we point out below, the action of the two judges did not meet constitutional standards, we do not consider how far a judge may legitimately accompany a searching party in order to be readily available for the issuance of supplemental warrants.

[8]The permissible breadth of a warrant must turn on the facts of each case. We see nothing in the cases relied on by petitioners to prevent the seizure of such records as tended to prove the fact of possession, and of the intent to distribute, the allegedly obscene material.

have said above, the search and the seizures either were valid when made or they were not. There is no authority for the issuance and execution of a retroactive warrant.[9]

(3) Insofar as the officers merely opened what were, to them, unmarked cartons in search of the two named magazines, we see nothing improper. There is, however, a serious issue as to the right of the officers, searching for two specific magazines and for business records relating only to those magazines, to leaf through other, unnamed, magazines. It would seem that a mere glance at the covers of the 171 unnamed magazines would have told the officers that they were not within the scope of their authority to search; the suggestion that business records relating to the named magazines might have been secreted in other magazines seems to us farfetched. However, the trial court, having concluded that the search and seizure was justified on other grounds, did not reach that issue. We do not decide it, since we conclude, for reasons stated below, that the seizures beyond the terms of the first two warrants were invalid even if the officers and judges lawfully inspected every page of every one of the 171 unnamed magazines.

(4) ■ The trial court held that the total seizure was lawful in reliance on cases (such as *Skelton* v. *Superior Court* (1969) 1 Cal.3d 144 [81 Cal.Rptr. 613, 460 P.2d 485]) which allow the seizure of "contraband" legitimately seen by officers while conducting a lawful search for other items. But we know of no authority that extends that rule to the seizure of matter which lies within the special protection of rules developed under the First Amendment. In fact, the cases which we have found hold that, where an item is sought which may turn out to be protected by the First Amendment, no seizure may be made without the express authority of a magistrate.[10]

If magisterial intervention is necessary, that determination must be made by a warrant, and a warrant must be supported by an affidavit and the warrant must be in writing. Not only do the statutes use such terms,[11] but the

---

[9]"The prospective language [of Pen. Code, §§ 1523 and 1528] imports that a written instrument, in one form or the other, must be in existence before a search may be conducted." (*Bowyer* v. *Superior Court* (1974) 37 Cal.App.3d 151, 163 [112 Cal. Rptr. 266].)

[10]For example, *Roaden* v. *Kentucky* (1973) 413 U.S. 496 [37 L.Ed.2d 757, 93 S.Ct. 2796]; *Marcus* v. *Search Warrant* (1961) 367 U.S. 717 [6 L.Ed.2d 1127, 81 S.Ct. 1708]; *Aday* v. *Municipal Court* (1962) 210 Cal.App.2d 229 [26 Cal.Rptr. 576].

[11]Penal Code section 1523: "A search-warrant is an order *in writing,* in the name of the people, signed by a magistrate, directed to a peace-officer, commanding him to search for personal property, and bring it before the magistrate." (Italics added.)

Penal Code section 1525: "A search warrant cannot be issued but upon probable

entire statutory scheme for traversing warrants and for attacking seizures purportedly legitimated by warrants requires that there be written records available for examination and testing at hearings, whether under section 1538.5 or under section 1539. To say that a magistrate may simply be shown a suspect item and orally authorize its seizure would make a mockery of all the constitutional guarantees limiting the powers of the police to seize personal property.[12]

In *Bowyer v. Superior Court, supra,* 37 Cal.App.3d 151 (hg. den.), the magistrate had taken a "telephonic affidavit" which had thereafter been duly recorded, transcribed and filed in conformity with subdivision (b) of section 1526, but had given only an oral direction to the officer to proceed with the requested search and seizure. The appellate court held that the oral direction did not support the seizure, since only a written warrant is contemplated by the statutes. Clearly, as in *Theodor,* the actions taken in the case at bench fall short of the actions held insufficient in *Bowyer.*

### III

As we said above, the trial court did not reach the portion of the motion attacking certain potential oral testimony. Whether, in fact, that testi-

---

cause, *supported by affidavit,* naming or describing the person, and particularly describing the property and the place to be searched." (Italics added.)

Penal Code section 1526: "(a) The magistrate may, before issuing the warrant, examine on oath the person seeking the warrant and any witnesses he may produce, and must take his affidavit or their affidavits in writing, and cause same to be subscribed by the party or parties making same.

"(b) In lieu of the written affidavit required in subdivision (a), the magistrate may take an oral statement under oath which shall be recorded and transcribed. The transcribed statement shall be deemed to be an affidavit for the purposes of this chapter. In such cases, the recording of the sworn oral statement and the transcribed statement shall be certified by the magistrate receiving it and shall be filed with the clerk of the court. In the alternative in such cases, the sworn oral statement shall be recorded by a certified court reporter and the transcript of the statement shall be certified by the reporter, after which the magistrate receiving it shall certify the transcript which shall be filed with the clerk of the court."

[12]In *Theodor* v. *Superior Court* (1972) 8 Cal.3d 77 [104 Cal.Rptr.226, 501 P.2d 234], the magistrate, apparently intending to proceed under the discretionary provisions of section 1526, above quoted, had examined a witness under oath, made notes of that testimony, and read them into a record. The Supreme Court held that, while that procedure was unobjectionable as a device to aid the magistrate in determining the credibility of a person who had subscribed a proper warrant, it did not, itself, satisfy the statutory requirement that oral testimony be recorded and subscribed. The court said (at p. 87): "In the case at bar, the magistrate exercised his discretion to examine the undisclosed informant orally. This examination did not produce an oral statement properly recorded and transcribed within the meaning of section 1526, subdivision (b). Hence the fruits of the examination cannot be considered an affidavit."

It is obvious that the magistrates here did not come even close to the procedure held insufficient in *Theodor.*

mony is the "fruit" of the seizures of items we order suppressed or of other and lawfully acquired information, is a matter not susceptible of determination in this court. As to that matter, a further trial court hearing is required.

In addition, the state of the record is such that we are unable to specify, in our judgment, the exact documents to be suppressed. We leave it to the trial court, aided by the parties, to specify such details of suppression as may be required by the general terms of our judgment.

Let a writ of mandate issue, directing the superior court: (1) to vacate so much of its order denying petitioners' motions to suppress as involved items other than those specifically included within the express terms of warrants 3580 and 3589; (2) to grant the motions to suppress as to said other items; and (3) to hold a hearing on the specific items to be suppressed and to determine, so much of said motions as related to the potential testimony of Irving Sofsky and Robert Kanters.

Files, P. J., and Dunn, J., concurred.

A petition for a rehearing was denied April 25, 1974, and the petition of the real party in interest for a hearing by the Supreme Court was denied June 5, 1974.