[Crim. No. 30418. Second Dist., Div. Five. July 25, 1978.]

THE PEOPLE, Plaintiff and Appellant, v.
PAUL ALLEN COOPER, Defendant and Respondent.

COUNSEL

John K. Van de Kamp, District Attorney, Harry B. Sondheim and Eugene D. Tavris, Deputy District Attorneys, for Plaintiff and Appellant.

Kanarek & Berlin and Sheldon Berlin for Defendant and Respondent.

OPINION

KAUS, P. J.—The People appeal from an order of the Superior Court setting aside pursuant to Penal Code section 995 the amended information charging defendant with forgery. (Pen. Code, § 470.)

## FACTS—PRELIMINARY HEARING

Brian Harvey was president of Alflex Corporation in Gardena, a manufacturer of electrical wire, cable, conduit and aluminum coil sheet. In late October or early November 1974, Harvey entered into an oral agreement with defendant, the terms of which were as follows: defendant was to be marketing manager of a New Jersey corporation which Harvey had recently acquired; defendant would be paid a salary of $2,000 a month and would get a bonus if the new venture was successful; Harvey would pay the difference between the appraised value of defendant's home and the selling price plus closing costs; Harvey would also pay for the moving expenses of defendant and his family.

Elmer Steinkuhler, marketing manager for Alflex Corporation, spoke to defendant about his impending move in December 1974. When defendant mentioned that Harvey was paying all of his moving expenses, Steinkuhler inquired if he had a written contract to that effect. Defendant answered, "I don't have a contract on this. I have taken his word."

Defendant moved to New Jersey in late 1974 or early 1975. In March 1975, Harvey decided to close down the New Jersey company because of financial difficulties. He telephoned defendant and informed him of his imminent termination. Defendant said he was disappointed since he had moved his family to the east. He requested to be permitted to handle Alflex Corporations' flexible conduit marketing in the east. Harvey told defendant that he "felt that he [defendant] wasn't really equipped to handle the marketing of that type of commodity."

In August 1975, Harvey was served with a copy of a verified complaint, filed in Los Angeles, in which defendant and his wife Linda were plaintiffs and Harvey· and Alflex were named as defendants. The complaint alleged three causes of action: "Breach of Written Contract; False Representations; Breach of Third Party Beneficiary Promise in Written Contract."

The first cause of action alleged breach of a written employment contract that defendant Cooper had entered into with Harvey on November 3, 1974, in Gardena, California. The complaint further stated, "A true copy of said contract is attached hereto; marked Exhibit 'A,' and by reference made a part hereof." The attached copy was a three page document entitled "Contract of Employment" with the signatures of Brian L. Harvey and Paul Cooper at the end. It purported to hire defendant "for a term of five years" on certain conditions: that defendant would receive an annual salary increase of ten percent; that he would be paid a "minimum bonus of 20%" of his annual salary level; and that, because defendant's wife would have to leave her job, she would be reimbursed in an amount equal to her average salary for the months of October 1974 through January 1975 "until she commences employment at any new location." Other generous fringe benefits were provided for.

Damages prayed for in the complaint totaled $142,000 on the first cause of action, $142,000 plus $244,000 in punitive damages on the second cause of action, and $7200 on the third. Attached to the back of the complaint was a verification bearing defendant's signature in which he declared under penalty of perjury that the contents were "true of [his] own knowledge. . . ."

Harvey hired Messrs. Goldberg and Melendres of the law firm of Loeb and Loeb to represent him in the civil action brought by the Coopers. Pursuant to a stipulation between the attorneys for Harvey and the Coopers, Melendres was loaned the original purported contract of employment which was the subject of the lawsuit. Two questioned documents experts examined the contract and determined that the signature of "Brian L. Harvey" was not authentic.

Early in October 1975, Goldberg and Melendres contacted the district attorney's office and showed the contract and the reports of the questioned documents experts to Investigator Robert Ewen. On October 21, 1975, during a deposition at the offices of Loeb and Loeb relating to the civil suit, Ewen seized the contract.

A questioned documents expert working for the district attorney's office compared various handwriting exemplars supplied by defendant and Brian Harvey and came to the following conclusions:

1) That defendant had signed the name "Paul Cooper" to the contract; 2) that defendant had signed the name "Paul Cooper" to the verification of the complaint; and 3) that the signature of "Brian L. Harvey" on the contract was either a freehand copy or a tracing of the true signature of Brian Harvey—most probably a tracing.

Harvey, of course, testified that the signature on the contract was not his.

The records of the Standard Alarm Company, which operated the burglar alarm systems at Alflex Corporation in Gardena, revealed that the alarm system was turned on at 5:30 p.m. on November 1, 1974, and that the next entry to the premises was at 5:38 a.m. on November 4, 1974. There was no record of anyone entering or leaving Alflex on Sunday, November 3, 1974.

## DISCUSSION

*Venue.* The superior court's order setting aside the information was based in part upon the court's inability to find any evidence that the contract was forged in the County of Los Angeles.

No direct evidence of the location where the alleged forgery took place was presented. To fill this fatal gap, the People now point to language in the verified complaint filed by defendant in which he asserted that the contract of employment was "entered into . . . at Gardena, California." This statement, the People claim, represents an admission of a party (Evid. Code, § 1220) and hence is competent evidence of the locus of the forgery.

■ We cannot accept the People's argument. The theory of their case was that the contract, in its entirety, was a forgery and that the filing of the civil action was an uttering of that forged document. Much of the prosecution case was spent showing that no one had entered or exited the premises of Alflex Corporation in Gardena on November 3, 1974; presumably that evidence was presented to negative the possibility that the contract was entered into on that date, at that location. While we have no quarrel with the proposition that the testimony of a witness can be

believed in part and disbelieved in part (see *People* v. *Robinson* (1964) 61 Cal.2d 373, 389 [38 Cal.Rptr. 890, 392 P.2d 970]), the People would have us hold that the magistrate could use that rule, based on common sense, to perform an impossible mental contortion: to reject defendant's assertion that Harvey "entered into" the contract, but to accept the phrase "in Gardena" which modifies that assertion. Obviously, however, the words "in Gardena" are meaningless by themselves: they become meaningful only in association with the event asserted to have taken place in that location, and the event asserted to have taken place was not the forgery, but the making of a contract. It is patent that the allegation in the complaint was not an admission that the purported forgery took place in Gardena.

■ Absent evidence of the location where the forgery took place, venue is proper in the county in which the forged instrument was uttered. (See *People* v. *Bihn* (1928) 93 Cal.App. 566, 567 [269 P. 939].) Consequently, if the filing of the verified complaint, which incorporated by reference a photocopy of the allegedly forged contract, constitutes an uttering, venue would be proper in Los Angeles County.

The trial court held that the filing of the verified complaint did not constitute an uttering: ". . . I do not believe that . . . there's been an uttering . . . which means doing something with the intent that somebody by this act has been misled in believing it to be genuine and, of course, nobody has been misled up to this point."[1]

■ We disagree. "To constitute forgery by uttering or passing a forged instrument as defined in section 470 of the Penal Code, three important factors are requisite: 1. It must be uttered, published, passed, or attempted to be passed, as true and genuine; 2. It must be known by the person uttering or passing it to be false, altered, forged, or counterfeited; 3. It must be with intent to prejudice, damage, or defraud some person." (*People* v. *Smith* (1894) 103 Cal. 563, 565 [37 P. 516]; *People* v. *Katzman* (1968) 258 Cal.App.2d 777, 790-791 [66 Cal.Rptr. 319].) It appears to us that under applicable authorities each of these elements is satisfied by the record before the trial court. In explaining our reasons for this holding, we shall attempt to deal with those of defendant's contentions which we can follow.

---

[1] That fact is quite irrelevant. In *People* v. *Baker* (1893) 100 Cal. 188, 190 [34 P. 649] the intended victim had already begun to suspect the fraud when the illegal uttering took place.

■ There can be no question that the forged document is one which satisfies section 470 of the Penal Code. (*People* v. *McKenna* (1938) 11 Cal.2d 327, 332 [79 P.2d 1065].) Further if *People* v. *Kagan* (1968) 264 Cal.App.2d 648, 657-658 [70 Cal.Rptr. 732], certiorari denied, 394 U.S. 911 [22 L.Ed.2d 224, 89 S.Ct. 1027], is good law, it is immaterial that what was attached to the complaint in the civil action was not the forged contract itself but a photostatic copy. "Nor can it be doubted that the reproduction of such a false instrument by photocopying it results in the making of another false instrument, which reproduction, if done with intent to defraud and without authority, likewise constitutes forgery." (*Id.,* p. 656.) If the photocopying of the forged contract resulted in another forged instrument, the filing of the photocopy was the uttering of a forged instrument.

If there is a problem in the case it is whether or not under all of the circumstances the third requirement laid down by *People* v. *Smith, supra,* was satisfied—that is, was the instrument uttered "with intent to prejudice, damage, or defraud some person."

■ On the face of it, it is obvious that defendant's purpose in attaching the forged instrument to the complaint was, ultimately, to defraud Harvey.[2] It is, of course, too much to expect that defendant entertained any hope of fooling Harvey into believing his signature was genuine. To the extent that we may infer defendant's intent, it was either to do it the hard way by convincing a trier of fact that Harvey's signature to the contract was genuine or to scare Harvey into making a favorable settlement of his dispute with defendant by convincing him that the chances of fooling a judge or jury were pretty good. Why should this intent to defraud Harvey through the medium of a misled trier of fact be insufficient to satisfy section 470 of the Penal Code?

One suggestion on which, one way or another, defendant's arguments are based is that the statute demands that it be the forged instrument itself which is intended to be the vehicle by which the fraud is to be accomplished—as when a forged check is presented for encashment.

Although we have found no authority which has discussed the problem, we assume that there must be some functional relationship

---

[2] It is immaterial that the instrument was not uttered to the victim. (See *People* v. *Baker, supra,* 100 Cal. 188, 190; *People* v. *Russel* (1963) 214 Cal.App.2d 445, 452 [29 Cal.Rptr. 562]; *People* v. *Driggs* (1910) 14 Cal.App. 507, 509 [112 P. 577].) In fact, no particular victim is necessary. (*People* v. *Russel, supra.*)

between the forged instrument and the contemplated fraud. Here the fraud was, presumably, to be accomplished with the original forged contract, the photocopy of which was attached to the complaint. Whatever may be the outer limit, we have no doubt that the relationship between original and photocopy is sufficiently close to pass muster.

In this connection we note that it is no answer to the charge that the uttering of the forged instrument was not intended to accomplish the fraud without further effort. Thus it is immaterial that the exhibit to the complaint was apparently destined to accomplish no further function except to define the issues in a civil suit and that the genuineness of the contract would have to be established with the original and authenticating evidence.[3] That, however, was also true of the forged will which was offered for probate in *People* v. *Geibel* (1949) 93 Cal.App.2d 147, 166 [208 P.2d 743]. In order to accomplish its purpose, this will too had to be fraudulently authenticated as such in a judicial proceeding. Indeed the report in *People* v. *Geibel, supra,* indicates a good deal of effort on behalf of the defendant to do just that, yet the opinion holds that the crime of uttering the forged will was completed when it was knowingly tendered for probate with intent to defraud. (*Id.,* p. 166.)

■ Finally we note the obvious: it is no part of the crime charged that the fraud be successful or that it even ripen into an attempt. "It is not necessary, . . . that a party whose name has been forged has suffered actual damage; it is only essential that it appear that if the manifest intent of the defendant had culminated in success, such damage or detriment would follow." (*People* v. *Kuhn* (1917) 33 Cal.App. 319, 320 [165 P. 26]; see also *People* v. *Weitz* (1954) 42 Cal.2d 338, 350 [267 P.2d 295]; *People* v. *Turner* (1896) 113 Cal. 278, 281 [45 P. 331]; *People* v. *Horowitz* (1945) 70 Cal.App.2d 675, 688 [161 P.2d 833].)

■ We hold that the record indicates that a forged instrument was uttered in Los Angeles County.

*Search and Seizure.* As an alternative ground for upholding the setting aside of the information, defendant urges that the allegedly forged contract was procured by means of an unlawful search and seizure. The facts leading up to the seizure are as follows:

---

[3]Defendant points out that the rules of pleading did not compel him to plead the forged contract as an exhibit. (3 Witkin, Cal. Procedure (2d ed. 1971) p. 2053.) The fact is that defendant chose to attach the exhibit to the complaint, perhaps to impress upon Harvey at the outset that he meant business.

In September 1975, attorneys Melendres and Goldberg, who represented Brian Harvey in the civil action, entered into a stipulation with the attorney for defendant Cooper. In order to have the employment contract examined by questioned document experts, it was "stipulated" that Melendres and Goldberg would borrow the document from defendant's counsel and return it before the civil trial.

Two experts examined the contract and delivered written reports to Melendres and Goldberg concluding that the signature of "Brian L. Harvey" was "not authentic." The document was placed in a safe at the Loeb and Loeb office.

On September 25, 1975, District Attorney Investigator Ewen arranged to meet with Brian Harvey's attorneys. The meeting was held on October 2, 1975. At that time Ewen examined the contract and the reports of the documents experts.

Ewen was later contacted by Melendres, who stated that the contract was to be returned to defendant Cooper's attorneys at a deposition to be held at the law offices of Loeb and Loeb on October 21, 1975. Ewen told Melendres that the contract was evidence of a possible crime and Melendres gave Ewen permission to attend the deposition.

On October 21, Melendres and Ewen entered the room at Loeb and Loeb where the deposition was being held. Present in the room were counsel for defendant Cooper, a stenographic reporter, a Mr. Kaye, and one other person. The contract lay in the middle of a large table.

After some initial discussion among Melendres, Kaye, and counsel for defendant, Ewen pulled out his badge and identification card and announced that he was an investigator for the district attorney's office, that he was "investigating the possible crime of forgery and had reason to believe that . . . the contract laying on the table was evidence of that crime." Ewen then seized the contract and signed a "receipt" for it which was given to defendant's attorney.

■ The seizure of the contract was lawful. "Plain sight" observations of a law enforcement officer from a place where he has a right to be does not constitute a search within the meaning of the Fourth Amendment (*Lorenzana* v. *Superior Court* (1973) 9 Cal.3d 626, 634 [108 Cal.Rptr. 585, 511 P.2d 33]) and evidence so seen may be seized without a warrant. (*Harris* v. *United States* (1968) 390 U.S. 234, 236 [19 L.Ed.2d 1067,

1069-1070, 88 S.Ct. 992]; *People* v. *Hill* (1974) 12 Cal.3d 731, 758 [117 Cal.Rptr. 393, 528 P.2d 1]; overruled on other grounds in *People* v. *DeVaughn* (1977) 18 Cal.3d 889, 896, fn. 5 [135 Cal.Rptr. 786, 558 P.2d 872]; *People* v. *Block* (1971) 6 Cal.3d 239, 243 [103 Cal.Rptr. 281, 499 P.2d 961].) In California, the fact that the officer had foreknowledge of the presence of the evidence in that place is of no constitutional significance; that is, there is no "inadvertence" requirement in this state. (*North* v. *Superior Court* (1972) 8 Cal.3d 301, 307-308 [104 Cal.Rptr. 833, 502 P.2d 1305, 57 A.L.R.3d 155]; cf., *Coolidge* v. *New Hampshire* (1971) 403 U.S. 443, 464-473 [29 L.Ed.2d 564, 581-587, 91 S.Ct. 2022].)

Melendres' invitation to Ewen to attend the deposition on October 21 gave Ewen a "right to be" there. Ewen had ample reason to believe that the contract was evidence in a potential forgery prosecution. Defendant had no reasonable expectation of privacy (see *People* v. *Triggs* (1973) 8 Cal.3d 884, 891 [106 Cal.Rptr. 408, 506 P.2d 232]) in a document which he had relinquished to opposing counsel for the express purpose of allowing them to have the contract examined by questioned documents experts.

We do not perceive any Fourth Amendment implications to defendant's arguments that his "right to have a meaningful deposition" was interrupted by the seizure and that Ewen "could have waited until the deposition was over" before taking the contract into his custody. The seizure was constitutionally permissible regardless of any impact it may have had on the civil litigation.

The evidence before the magistrate was sufficient to support the issuance of the information charging defendant with forgery. Consequently, the order of the trial court setting aside the information is reversed.

Ashby, J., and Hastings, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied September 20, 1978.