[Crim. No. 11600. Third Dist. May 28, 1982.]

THE PEOPLE, Plaintiff and Appellant, v.
THOMAS WILMARTH, Defendant and Respondent.

COUNSEL

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Roger E. Venturi and Ramon M. de la Guardia, Deputy Attorneys General, for Plaintiff and Appellant.

Nicholas C. Holt for Defendant and Respondent.

OPINION

PUGLIA, P. J.—An information charging defendant with cultivation of marijuana (Health & Saf. Code, § 11358) was dismissed following an order of the trial court suppressing evidence of 515 growing marijuana plants (Pen. Code, § 1538.5, subd. (j)) and a finding that there was insufficient evidence to proceed with the prosecution (Pen. Code, § 1385). The People appeal. The issue concerns the extent of the privacy interest of the locator of an unpatented mining claim in the surface area of the property on which his claim resides. We shall reverse.

A Siskiyou County Sheriff's officer received information that marijuana was growing in the area of defendant's mining claim. He contacted the United States Forest Service which identified the claim site as public land. Special Agent Robert Dimmick, a forest service criminal investigator, accompanied sheriff's officers to the claim site. At the entrance to the driveway leading to defendant's residence there was a "No Trespassing" sign. As the officers drove up the driveway adjacent to defendant's house, they observed a marijuana plant growing in a pot on the front lawn. They followed a black plastic irrigation pipe down the road and, 60 to 80 yards beyond defendant's house, discovered 515 marijuana plants growing in an irrigated plot near a mine shaft opening.

For purposes of the suppression hearing it was competently established that defendant's mining claim on which the marijuana was growing was located on United States Forest Service land. An officer from the forest service testified than an unpatented mining claim on forest service land gives the locator the right to mine minerals but does not confer surface ownership.

The superior court held that a claim locator's limited possessory interest does not deprive him of the same "Fourth Amendment rights to which private landowners are entitled." Since there was no search warrant and no basis for a claim of exigency to justify the warrantless intrusion, the court suppressed as evidence all but the one potted marijuana plant found on defendant's front lawn.

In so ruling, the trial court was apparently guided by *United States* v. *Curtis-Nevada Mines, Inc.* (E.D.Cal. 1976) 415 F.Supp. 1373, a case cited to the trial court by defendant and holding that only members of the public holding governmental recreation licenses or permits are entitled to access to land on which are located unpatented mining claims. That case was reversed on appeal, however, in *United States* v. *Curtis-Nevada Mines, Inc.* (9th Cir. 1980) 611 F.2d 1277, a decision which was not cited to the trial court. In that case the federal court of appeals held that the general public has a right of free access to land on which are located unpatented mining claims for recreational use of the surface resources and for access to adjoining property, to the extent such uses do not interfere with mining activities (at p. 1286). The court of appeals decision pivoted on the court's interpretation of the 1955 Surface Resources and Multiple Use Act (30 U.S.C. §§ 611-612). The broad purpose of the Surface Resources and Multiple Use Act (act) is to provide for multiple use of the surface of public lands not incompatible with subsurface resource development and to end abuses of the old law which permitted claims to be located with no intent to prospect or mine but rather to gain exclusive possession of surface resources. (*Id.*, at p. 1279-1282.)

■ Section (b) of the act (30 U.S.C. § 612) is directly relevant to the question before us. It provides in part: "(a) Any mining claim hereafter located under the mining laws of the United States shall not be used, prior to issuance of patent therefor, for any purposes other than prospecting, mining or processing operations and uses reasonably incident thereto. [¶] (b) *Rights under any mining claim hereafter located under the mining laws of the United States shall be subject, prior to issuance of patent therefor, to the right of the United States to manage and dispose of the vegetative surface resources thereof and to manage other surface resources thereof* [italics ours] (except mineral deposits subject to location under the mining laws of the United States). Any such mining claim shall also be subject, prior to issuance of patent therefor, to the right of the United States, its permittees, and licensees, to use so much of the surface therof as may be necessary for such pur-

poses or for access to adjacent land: *Provided, however,* That any use of the surface of any such mining claim by the United States, its permittees or licensees, shall be such as not to endanger or materially interfere with prospecting, mining or processing operations or uses reasonably incident thereto: ..." (Italics in original.)

Vegetation consists of "plant life" (Webster's New Internat. Dict. (3d ed. 1971) p. 2537). Marijuana is a plant (Health & Saf. Code, § 11018). Entry by Agent Dimmick, a federal officer, on land the site of an unpatented mining claim to search for, remove or otherwise deal with illegally cultivated marijuana is squarely within the authority reserved by Congress to the federal government to "manage and dispose of the vegetative surface resources" on such land. Arguably, illegally grown marijuana is not a "resource" within the meaning of the act; nevertheless, its discovery and removal is directly related to management of other vegetation indisputably within that classification.

Agent Dimmick did not initiate the entry onto defendant's mining claim. Siskiyou County Sheriff's deputies provided the impetus for the operation. Agent Dimmick accompanied them to show them where the claim was and to observe himself whether federal land was being put to unlawful use by cultivation of marijuana. Participation by or presence of a federal officer is not essential to a legal entry by local law enforcement officers on public land owned by the federal government. The act as construed by the court of appeals in *Curtis-Nevada Mines* provides that lands on which unpatented mining claims are located are open to access and uses by the public which do not interfere with mining activities (pp. 1283-1286). The local officers therefore were lawfully on the land and they had a right to seize contraband which they observed there in plain view (*Lorenzana* v. *Superior Court* (1973) 9 Cal.3d 626, 634 [108 Cal.Rptr. 585, 511 P.2d 33]; *North* v. *Superior Court* (1972) 8 Cal.3d 301, 306 [104 Cal.Rptr. 833, 502 P.2d 1305, 57 A.L.R.3d 55]). While it is clear the officers' observation of the growing marijuana was not coincidental to an entry for some nonlaw enforcement related purpose, inadvertence is not a prerequisite to a lawful plain view discovery (*North* v. *Superior Court, supra,* 8 Cal.3d at pp. 307-308).

■ Defendant challenges the sufficiency of the evidence to establish that the marijuana was found on public land. As we have indicated, we are satisfied there is substantial competent evidence of public ownership of the land. However, even were we to accept the converse proposition, our conclusion would not change. A warrantless intrusion may be justi-

fied by an officer's good faith reasonable belief that a person with authority to do so has given consent thereto. (*People* v. *Carr* (1972) 8 Cal.3d 287, 298 [104 Cal.Rptr. 705, 502 P.2d 513].) The record shows the sheriff's officers acted only after contacting the forest service and receiving assurances the land was public. A forest service agent accompanied them to the site. Even if they were mistaken as to the status of the land, the officers' belief that the land was under the control of the forest service which consented to their entry was reasonable.

The judgment of dismissal is reversed; the superior court is directed to vacate the order granting the motion to suppress, to enter a new order denying the motion and to take such further proceedings as are required by law.

Carr, J., and Sparks, J., concurred.