[Crim. No. 5822. Fifth Dist. Dec. 13, 1982.]

THE PEOPLE, Plaintiff and Respondent, v.
DON CARMON ALBRITTON, Defendant and Appellant.

**COUNSEL**

Willard R. Weddell, Public Defender, and Daniel R. Resnick, Deputy Public Defender, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, James T. McNally and Robert G. Mendez, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**ZENOVICH, J.**—This is an appeal from a judgment of conviction, after appellant, Don Carmon Albritton, pled guilty to two charges of receiving stolen property in violation of Penal Code section 496. The sole issue on appeal tests the validity of the trial court's denial of appellant's Penal Code section 1538.5 motion to suppress evidence. For the reasons to be explained herein, we con-

clude that the trial court erred in denying appellant's motion and his conviction should therefore be reversed.

FACTS DEVELOPED AT THE HEARING ON THE MOTION TO SUPPRESS EVIDENCE.

On May 13, 1980, Detective J. J. Foy of the narcotics division of the Bakersfield Police Department obtained a search warrant signed by Judge King of the municipal court to search the premises and the person of appellant. The warrant authorized a search for contraband narcotics and evidence "tending to establish the identity of persons in control of the premises searched, such as rent receipts, cancelled mailing envelopes and keys, and articles or items *tending to show that Don Albritton is involved in the sale of narcotics* consisting in part of and including, but not limited to, large amounts of currency, sales records, address books, files, and notes bearing symbols commonly associated with narcotic transactions; . . . " (Italics added.)

Boxes were checked on the first page of the search warrant indicating that there was probable cause for believing that the property contained (1) property or things used as a means of committing a felony; (2) property or things in the possession of a person with the intent to use it as a means of committing a public offense, or in the possession of another to whom he may have delivered it for the purpose of concealing it or preventing its being discovered; and (3) property or things which consist of an item or constitutes evidence which tends to show that a felony has been committed, or tends to show that a particular person has committed a felony. *The box labeled "stolen or embezzled property" was not checked.* It is undisputed by the parties in the instant case that the search warrant just described was not a warrant to search for stolen property.

The search was based upon an affidavit signed by Detective Foy. Foy declared that probable cause was established because of his contacts with a confidential and reliable informant who related to him that he had personally observed appellant in possession of approximately four ounces of methamphetamine. The search warrant in the instant case was made a part of the record.

Also on May 13, 1980, Police Detective Randy N. Boggs, who was *not* assigned to the narcotics division, "happened to be in the police department at the time [the other officers] were going to serve the search warrant." Boggs testified that he never communicated with the officer who obtained the warrant prior to the time the officer obtained the same. Boggs testified that he was told by one of the officers that the search warrant was for "narcotics and narcotic paraphernalia, and stolen property." He was unable to identify which officer told him this. When Boggs was first asked by the public defender "what was your personal reason for going to the premises that day, your personal reason,"

Boggs replied, "I was requested by the Vice Division of the Bakersfield Police Department to assist them in the search for narcotics at that residence."

Boggs testified that the vice officer searching for the narcotics went into the main portion of the residence but that he immediately went into the garage area of the residence and then into the open area at the rear of the residence. Boggs was asked, "What were you looking for when you went to the rear area of the residence?" He replied, "After I had gone into the garage area, I was looking for stolen vehicles." Boggs was asked if he had a suspicion before he went out to search the premises that appellant was in possession of stolen vehicles. Boggs replied, *"I had known of Mr. Albritton's past regarding stolen vehicles, yes, sir."* Boggs was then asked if the search for stolen vehicles was the main thing he was looking for. He replied, *"I was looking for that,* and also to assist them with the search warrant, yes, sir." (Italics added.)

As soon as Boggs went into the garage, he located a Honda ATC three-wheel, off-the-road vehicle and inspected it to locate the vehicle identification numbers. When asked what made him think the ATC was stolen, Boggs replied, "It is not uncommon to check all property, especially property with serial numbers, vehicle identification numbers, things of this nature, when conducting a search warrant." He testified that he checked the serial numbers because he had a suspicion that the vehicle was stolen. He did not testify that he checked serial numbers to *identify* the occupant of the premises. Again, Boggs repeated that he did have a suspicion before he went out to the premises that he was going to find some stolen property.

Boggs immediately ran a "wants" check on the ATC vehicle. It came back stolen and he proceeded to search the rest of the premises for stolen vehicles. In the rear area of the residence, Boggs found 18 motor vehicles, some in an operable condition, some inoperable, and some stripped. He looked into the cab area of a GMC pickup and noted a vehicle identification number on the glove box and ran a check on it. This vehicle also came back as stolen. Boggs checked another vehicle and it also came back as stolen. He checked additional vehicles, some of which came back with no record on file.

As a result of Boggs' search, eight vehicles or parts thereof were seized. Four of these vehicles accounted for appellant's four counts of receiving stolen property.

As a result of the vice officer's search of the residence, several bags and containers with white powder were seized. In addition, the vice officer seized a cigarette box with three hand-rolled cigarettes, eight blue and gray capsules, two baggies of marijuana, miscellaneous papers, miscellaneous narcotics

paraphernalia, a yellow metal ring, scales, and a 38-caliber revolver and 22-caliber rifle.

Boggs' report of the incident, which was admitted into the record, stated *incorrectly* that the search warrant was for the purpose of obtaining and locating stolen property in addition to contraband narcotics or narcotic paraphernalia. On the witness stand, Boggs testified that when he *first* went into the *garage* he was looking for narcotics. He immediately saw the ATC vehicle and he ran a want check on it. Then, Boggs testified, he went to the rear of the residence and checked for other stolen vehicles. However, in his report made a few days after the incident, he stated that he immediately responded to the rear of the Albritton residence where he located 18 motor vehicles. Further, Boggs stated: "Due to the fact that Albritton's name has come up quite frequently in prior investigations regarding stolen vehicles and possession of stolen vehicles, and the fact that Albritton has been arrested in the past for possession of stolen vehicles, I began to check the license number, VIN's and secondary numbers on the vehicles at the rear of his residence and on his property."

Detective Foy also wrote a police report on the incident. He entitled his report "Narcotics Investigation."

Boggs admitted on the stand that he does not normally rely on officers assigned to the narcotics division to obtain search warrants for him when he desires to search for stolen property. He also admitted that he had never discussed with Officer Foy his suspicion that Albritton had stolen property on his premises. Boggs admitted that his primary responsibility at work was working in auto theft.

Appellant's attorney argued strenuously to the court that Boggs was present during the search under the color of the Foy warrant, but had no reason to believe that the Foy warrant would have included the stolen property he was really there to look for. Appellant's attorney stressed that Foy was assigned to the narcotics division, Foy had obtained a warrant to search for narcotics, and that Boggs had never informed Foy that appellant was suspected of being in possession of stolen property. Appellant's counsel also stressed that the fact Boggs went off *separately* from the other officers when he first got to the premises "is particularly indicative to me that he was looking for something other than what the officers were looking for."

Appellant's counsel stated, "[T]his is a patent violation of the warrant requirement in terms of going beyond those items that were specifically described, and I think it's absolutely clear to me that all vehicles seized, vehicles observed, should be suppressed based on his subjective reasons for being there,

as I think they are clear from his report and from things he said on the stand to-day, and also from the fact that he is not the one who seized any drugs."

The district attorney argued the plain view doctrine. He stressed that Boggs was authorized to help in conducting the search warrant and he was authorized to go into the garage area. He stressed that the vehicle registration number was in plain view and that Officer Boggs was permitted to run a check on it. Finally, the district attorney argued that the police were authorized to seize the vehicles regardless of the fact that they were not specifically listed in the search warrant pursuant to *Skelton* v. *Superior Court* (1969) 1 Cal.3d 144 [81 Cal.Rptr. 613, 460 P.2d 485].

Thereafter, Judge King issued his decision, stating the following: "After reviewing the evidence, the Court finds that the officer was legally on the premises pursuant to a search warrant; that the obtaining of the search warrant was not a pretext for a general exploratory search; that the stolen property was in plain view; that the search warrant authorized a search for personal property which could identify the occupant of the premises, which would include vehicle registration; that the search warrant authorized seizure of evidence to show that the suspect is engaged in the sale of narcotics and that the medium of exchange for narcotics is frequently stolen property."

## DISCUSSION

Appellant contends that the trial court erred in denying his motion to suppress evidence seized during the course of the search because the evidence seized constitutes the product of a search which exceeded the scope of the warrant. He argues that the search warrant in the instant case did not authorize a search for stolen vehicles. He contends that Officer Boggs, from the *auto theft* detail, went along on the search with a strong suspicion that appellant was in possession of stolen vehicles and Boggs never even suggested that in checking vehicle iden-tification numbers he was attempting to confirm that appellant resided at the residence or that appellant was utilizing stolen vehicles in narcotic transactions. Moreover, he contends the only conclusion that can be drawn from the testimony offered at the hearing is that Boggs' investigation of the ATC was not the inadvertent fallout of a narcotics investigation.

Respondent contends that Detective Boggs did state that when he first entered the garage he was there for the purpose of locating narcotics or narcotics paraphernalia. ■■ ■■ ■■ Respondent argues that Boggs observed a Honda motor vehicle in plain view and was able to see the motorcycle's serial numbers in plain view.[1] Respondent also contends that Boggs stated he initiated

---

[1]Respondent appears to confuse the terms "in plain view" and the "plain view doctrine." The "plain view doctrine" established in *Coolidge* v. *New Hampshire* (1971) 403 U.S. 443 [29

a search for stolen vehicles only *after* he learned that the motorcycle in the garage was stolen.

■ The Fourth Amendment to the United States Constitution, article I, section 13 of the California Constitution, and Penal Code section 1525 all require that the warrant particularly describe the thing or property to be seized. Penal Code section 1529 demands that the items be described with "reasonable particularity, . . . " This mandate is satisfied if the description of the property in the warrant "imposes a meaningful restriction upon the objects to be seized." (*Burrows* v. *Superior Court* (1974) 13 Cal.3d 238, 249 [118 Cal.Rptr. 166, 529 P.2d 590].) ■ However, "When officers, in the course of a bona fide effort to execute a valid search warrant, discover articles which, although not included in the warrant, are reasonably identifiable as contraband, they may seize them whether they are initially in plain sight or come into plain sight subsequently, as a result of the officers' efforts." (*Skelton* v. *Superior Court, supra,* 1 Cal.3d 144, 157; see also *People* v. *Ramos* (1982) 30 Cal.3d 553 [180 Cal.Rptr. 266, 639 P.2d 908].) Nonetheless, police officers are foreclosed from seizing items indiscriminately; they must show a nexus between the item to be seized and criminal behavior. (*Warden* v. *Hayden* (1967) 387 U.S. 294, 307 [18 L.Ed.2d 782, 792, 87 S.Ct. 1642]; *People* v. *Hill* (1974) 12 Cal.3d 731, 762 [117 Cal.Rptr. 393, 528 P.2d 1], overruled on other grounds in *People* v. *DeVaughn* (1977) 18 Cal.3d 889, 896 [135 Cal.Rptr. 786, 558 P.2d 872].)

Respondent, relying on *Skelton, supra,* contends that the final and most crucial consideration is whether the motorcycle was reasonably identifiable as contraband such that it could be seized without benefit of a warrant. Respondent argues that because Boggs checked the serial number on a car which revealed it was indeed stolen, this reasonably identifies the motorcycle as contraband. Under the circumstances of this case, we do not think so, even though this court, in *People* v. *Murray* (1978) 77 Cal.App.3d 305, 309-310 [143 Cal.Rptr. 502], stated, "Most commonly, the plain view doctrine is applied to items which are inherently recognizable as contraband, such as drugs, drug paraphernalia or illegal weapons." In *Murray,* we declined to stretch the plain view doctrine to those limits which would throw out the central purpose of a warrant "which is to interpose an unprejudiced and detached judicial mind be-

L.Ed.2d 564, 91 S.Ct. 2022] is intended to provide a basis for making a *seizure* without a warrant. Indeed, the seizure of evidence which has not been particularly described must be made in the course of an *otherwise constitutional search* already in progress or in the course of an otherwise justifiable intrusion into a constitutionally protected area.

By comparison, "in plain view" is descriptive of a situation in which there has been *no search* at all in the Fourth Amendment sense; it encompasses those circumstances in which an observation is made by a police officer *without* a prior physical intrusion into a constitutionally protected area. In this situation, there is no search at all because of the plain view character of the situation; there is no intrusion covered by the Fourth Amendment. (1 LaFave, Search and Seizure (1978) § 2.2, pp. 240-243.)

tween the officer and the seizure and to eliminate discretion in the officer." (*Id.*, at p. 311.) We went on to say that "Notwithstanding a generalized suspicion that the television sets and other items had been stolen, and aside from the 20 television sets from which the serial numbers had been removed, the testimony at the preliminary hearing did not establish that the officers in fact knew which items were contraband and which items legitimately belonged to the appellant." (*Id.*, at pp. 311-312, fn. omitted.)

Similarly, in *Nunes* v. *Superior Court* (1980) 100 Cal.App.3d 915 [161 Cal.Rptr. 351], we invalidated the seizure of certain items taken "on the general suspicion that they coincided with descriptions of stolen property contained in police reports not in [the searching officers'] possession." (*Id.*, at p. 932.) In *Nunes,* we concluded, "it appears that the police must have a *specific* basis upon which to rationally select items as evidence of criminal activity under the plain view doctrine." (*Ibid;* see also this court's opinion in *People* v. *Sedillo* (1982) 135 Cal.App.3d 616 [185 Cal.Rptr. 475].)

█ As we stressed in *People* v. *Murray,* the validity of the seizure of items not listed in the warrant is also subject to the requirement that the contraband not listed in the warrant be discovered *inadvertently* and not as a result of using the warrant as a pretext to gain entry for the purpose of conducting a *general exploratory search* for unlisted property. (*Murray, supra,* 77 Cal.App.3d 305, 310.) As the United States Supreme Court stated in *Coolidge* v. *New Hampshire, supra,* 403 U.S. 443, 469-470 [29 L.Ed. 2d 564, 585, 91 S.Ct. 2022]: "[T]he discovery of evidence in plain view must be *inadvertent.* The rationale of the exception to the warrant requirement, as just stated, is that a plain-view seizure will not turn an initially valid (and therefore limited) search into a 'general' one, while the inconvenience of procuring a warrant to cover an inadvertent discovery is great. But where the discovery is anticipated, where the police know in advance the location of the evidence and intend to seize it, the situation is altogether different." (Fn. omitted, italics added.)

The warrant in the instant case was sought by the narcotics officers of the Bakersfield Police Department. The warrant sought narcotics and narcotics paraphernalia. Indeed, the vice officers who searched appellant's premises found narcotics and narcotics paraphernalia. These items were seized and were the basis of some of the charges against appellant. Appellant has never charged that the search warrant in the instant case was invalid. Indeed, it can also be stated that the vice officers could well have searched the garage for narcotics and narcotics paraphernalia. However, that was not the exact chain of events here.

█ Upon a close reading of the record before us, we can only conclude that Officer Boggs, who was assigned to the *auto theft detail* at the Bakersfield

Police Department, "went along for the ride" on a search to be conducted for *narcotics*. Whether he subjectively felt that the search warrant also included an authorized search for stolen vehicles is irrelevant. There is no dispute that the warrant in the instant case did not include stolen vehicles or other stolen property. Officer Boggs admitted on the stand that he immediately separated himself from the vice officers and went to the garage in the rear area of the premises. He admitted that before going to the premises he was well aware that appellant might be in possession of stolen vehicles. He admitted that he was aware that appellant had been arrested for the possession of stolen property in the past. On this record, it would be preposterous to conclude that Officer Boggs, assigned to the auto theft detail, "inadvertently" discovered stolen vehicles while in the search for narcotics and narcotics paraphernalia. This case might be entirely different if, indeed, Officer Foy and his fellow vice squad officers while searching for narcotics and narcotics paraphernalia came into appellant's garage and discovered vehicles quite possibly stolen because serial numbers had been removed or otherwise tampered with or if, in fact, there were other indications that vehicles might very well be stolen. Then, pursuant to *Skelton* v. *Superior Court, supra,* 1 Cal.3d 144, seizure of the vehicles in question would have been justified even though they were not particularly described in the warrant in question.

Moreover, we do not believe *Skelton* should be read for the proposition that an officer assigned to an auto theft detail may "go along for the ride" with officers assigned to the narcotics division on a search for narcotics in the hopes of finding stolen vehicles not particularly described in the warrant. The following passage from the transcript clearly indicates that Officer Boggs' discovery of the stolen vehicles was not inadvertent as required with a plain view exception to operate:

"Q Had you had a suspicion before you went out to search the premises that Mr. Albritton was in possession of stolen vehicles?

"A I had known of Mr. Albritton's past regarding stolen vehicles, yes, sir.

"Q And that was actually one of the main things you were looking for when you went out there?

"A I was looking for that, and also to assist them with the search warrant, yes, sir."

We conclude the above passage indicates that Officer Boggs was, in effect, using the warrant "as a pretext to gain entry to the premises for the purpose of conducting a general exploratory search" for stolen vehicles. (*People* v. *Murray, supra,* 77 Cal.App.3d 305, 310.)

The judgment is reversed.

Franson, Acting P. J., and Quall, J.,* concurred.

*Assigned by the Chairperson of the Judicial Council.