Opinion
WOOD, Acting P. J.—
Statement of Facts
This matter comes before the court by way of appeal from a judgment of conviction after a plea of guilty and a denial of a motion under Penal Code section 1538.5. The motion to suppress was made on the basis that evidence seized, in particular a camera, was beyond the scope of the search warrant issued by the magistrate.
It is from this ruling that the appeal is made.
The evidence, which is undisputed, is that narcotics officers acting under a search warrant entered appellant’s home seeking “controlled substances including cocaine and paraphernalia used in sales of cocaine.” In the course of the search, they came upon a camera which they searched, finding no contraband in it. Before returning the camera to its resting place, the officers chose to run a serial number check over the phone to the sheriff’s department. It was determined that the camera was stolen after which it was confiscated and became the basis for the respondent’s case on receiving stolen property.
Issues Raised
The appellant contends that the officer was acting beyond the scope of the warrant in running the serial number check and that, after realizing the camera was free of contraband and free of suspicion in and of itself, not related to contraband and having no nexus to criminal activity, he should have returned it to the place whence it was taken.
The respondent contends that the taking of the serial number from the camera was nothing more than viewing that which was in “plain view” and that calling in the serial number to see if the camera was stolen was not a search or seizure, beyond the scope of the warrant.
The lower court ruled that the officer did not seize and remove the camera.
*Supp. 23 Law
A search warrant must describe the items to be searched so as to prevent general exploratory searches which unreasonably interfere with a citizen’s right of privacy. (Burrows v. Superior Court (1974) 13 Cal.3d 238 [118 Cal.Rptr. 166, 529 P.2d 590],
Articles may be seized only if there is probable cause to believe they are evidence or contraband or are covered under the search warrant. (Guidi v. Superior Court (1973) 10 Cal.3d [109 Cal.Rptr. 684, 513 P.2d 908] 1.)
The seizure of items not listed in the search warrant is not valid unless they are discovered inadvertently and not by use of the warrant as a pretext to conduct an exploratory search for unlisted property. (People v. Murray (1978) 77 Cal.App.3d 305 [143 Cal.Rptr. 502]; People v. Albritton (1982) 138 Cal.App.3d 79 [187 Cal.Rptr. 652].)
Officers may not indiscriminately seize unlisted items under a search warrant unless there is some nexus between the item seized and criminal behavior. (People v. Albritton, supra, 138 Cal.App.3d 79.)
The nexus may be supplied through distinctive markings or through identification by an official source. (People v. Murray, supra, 77 Cal.App.3d 305.)
If a vehicle is legally stopped and detained, it is proper to run a warrant check on the driver if the driver is not unduly detained for just that purpose. (People v. McGaughran (1979) 25 Cal.3d 577 [159 Cal.Rptr. 191, 601 P.2d 207].)
Discussion
It is stipulated that the sole issue on appeal is to test the validity of the trial court’s denial of the appellant’s motion to suppress.
In this case the officers, acting under a valid search warrant, looked into the subject camera for contraband. None was found. That search is not disputed as being improper. Objection is made, however, to the observation and utilization of serial numbers on the camera (visible to plain view) after no contraband was found. It is argued that the search for contraband was proper under the warrant, but that taking the numbers and “running them” to see if the camera was stolen was an illegal seizure because there was no nexus between the crimes investigated under the warrant and the crime here being investigated (possession of stolen property).
*Supp. 24 To put it in simple terms, the appellant argues that the officers had to close their eyes to the numbers and couldn’t use them notwithstanding that they had the right (concededly) to look at and into the camera. To rule in this fashion would be to say that the police could not look at what was clearly available to them in plain view. It strains logic to argue that the police authorities cannot act in this manner.
While there are no California cases cited, nor found by the court on its own research, on point, the case of People v. McGaughran, supra, 25 Cal.3d 577, is helpful. Here, the Supreme Court addressed the issue of running a warrant check on suspects detained after a traffic stop. The court found nothing illegal in running the warrants if the time of the stop was not longer than what would be required to complete the investigation at the scene. In other words, the court condemned detentions having no nexus to the stop just to allow completion of the warrant checks. The court (pp. 582-583) held that this was not a search because neither the driver’s person nor his car were searched. The court held: “Indeed, in conducting a warrant check, the officer does not ‘search’ at all in the constitutional sense: the object of the inquiry—an outstanding arrest warrant—is not a personal document that an individual legitimately expects will remain private, such as his bank statements [citations]; rather, it is a court order recorded in the government’s own files compiled from official reports of law enforcement agencies and the Department of Motor Vehicles, and is retrieved by use of state and local police communication systems.”
In our case, we have a concededly valid warrant and a legitimate inspection of the camera for contraband. In plain view to the officers is the serial number of the camera. The actions of the officers in checking official records (clearly not private) for stolen items, as in the checking of warrants in the McGaughran case, is simply not a search. The appellant cannot argue that she has any legitimate right to expect privacy of this official record of stolen goods.
Had the officers simply memorized the numbers, left the premises and then checked the records for stolen property, could they not have had a basis to seek a warrant at that point in any event? The court feels that they could, and to require an extra step is to require a useless act.
Although distinguishable, the case of People v. Murray, supra, 77 Cal.App.3d 305, lends some support here to the lower court’s ruling denying suppression. That case, at least in dicta, held that officers executing a valid search warrant could seize property which is otherwise readily identifiable as contraband or which during the search is determined to be contraband through radio identification by an official source.
*Supp. 25 People v. Albritton, supra, 138 Cal.App.3d 79, is distinguishable from the case at bench because there was no clear basis for the search at the outset which ultimately revealed the contraband. In our case, it is conceded that the officers, at least at the outset, had a basis to check the camera.
Appellant concedes that when officers, in a bona fide effort to execute a valid search warrant, discover articles although not in the warrant, which are reasonably identifiable as contraband, they must seize them whether they are entirely in plain sight or come into plain sight subsequently as a result of the officers’ efforts. (Skelton v. Superior Court (1969) 1 Cal.3d 144 [81 Cal.Rptr. 613, 460 P.2d 485]; People v. Ramos (1982) 30 Cal.3d 553 [180 Cal.Rptr. 266, 639 P.2d 908].)
She also argues that police officers are foreclosed from seizing items indiscriminately. They must show a nexus between the items to be seized and criminal behavior. (People v. Albritton, supra, 138 Cal.App.3d 79.)
The court has shown that there indeed is a nexus between the camera and criminal behavior based on the stolen property list.
Conclusion
Thus the lower court ruling is correct and the judgment is affirmed.
Conklin, J., concurred.
FREDMAN, J.
I cannot agree with the conclusion reached by the majority and file this dissent to memorialize my reasons.
I would determine that (1) obtaining a serial number from a camera, under the circumstances of this case, was an impermissible seizure of the serial number, and (2) the seizure of the serial number was neither authorized nor justified by the existence of the search warrant authorizing and justifying a search for narcotics on the premises occupied by the defendant.
In order for evidence seized during a search to qualify for the plain-view exception that a warrant issue prior to the search, it has been said it must be shown that (1) the initial intrusion which afforded the authorities the plain view was lawful; (2) the discovery of the evidence was inadvertent; and (3) the incriminating nature of the evidence was immediately apparent. Coolidge v. New Hampshire (1971) 403 U.S. 443 [29 L.Ed.2d 564, 91 S.Ct. 2022]; United States v. Scarfo (1982) 685 F.2d 842; People v. North (1972) 8 Cal.3d 301 [104 Cal.Rptr. 833, 502 P.2d 1305, 57 A.L.R.3d 155]; People v. Sirhan (1972) 7 Cal.3d 710 [102 Cal.Rptr. 385, 497 P.2d 1121]; Skelton *Supp. 26 v. Superior Court (1969) 1 Cal.3d 144, 157 [81 Cal.Rptr. 613, 460 P.2d 485].
I do not quarrel with the majority as to the first two requirements for application of the plain-view doctrine as they relate to the facts at bench. The warrant was regular and the examination of the camera as a hiding place for narcotics was well within the scope of the warrant. Where I depart from the court is on the issue of whether or not the incriminating nature of the evidence was immediately apparent. This is not a case where the serial numbers were obliterated, or the object was recognized by the investigators as having been reported stolen, nor did the object bear damage reasonably believed to be caused by a criminal activity. Until the officers copied down the serial number and called it in to the police station, they had no reason to believe that the camera was either contraband or stolen.
My conclusion is reached after reviewing the California authorities cited by both sides, particularly People v. Superior Court (Aslan) (1969) 2 Cal.App.3d 131 [82 Cal.Rptr. 507]; People v. Murray (1978) 77 Cal.App.3d 305 [143 Cal.Rptr. 502]—including the dicta at page 309—and People v. Albritton (1982) 138 Cal.App.3d 79 [187 Cal.Rptr. 652].
Courts in other jurisdictions, apparently relying on the same Fourth Amendment rights we review today, have come to different conclusions. Supporting the validity of an examination of serial numbers on an object found in plain view after a lawful entry are: United States v. Schire (7th Cir. 1978) 586 F.2d 15; State v. Noll (1984) 116 Wis.2d 443 [343 N.W.2d 391]; State v. Glover (1978) 60 Ohio App.2d 183 [14 Ohio Ops.3d 253, 396 N.E.2d 1064]; People v. Torand (Colo. 1981) 622 P.2d 562; People v. Torand (Colo. 1981) 633 P.2d 1061.
Cases rejecting validity under similar circumstances to those here are United States v. Gray (6th Cir. 1973) 484 F.2d 352; United States v. Clark (8th Cir. 1976) 531 F.2d 928; United States v. Sokolow (5th Cir. 1971) 450 F.2d 324; United States v. Langley (6th Cir. 1972) 466 F.2d 27.
This difference in viewpoint is highlighted by the Wisconsin Supreme Court in State v. Noll, supra, 343 N.W.2d at p. 401: “It is apparent that the common denominator in all of the cases in which the recording of identifying marks or numbers was deemed appropriate is the existence of a reasonable suspicion in the mind of the searching officer, not rising to the level of probable cause, that the inspected items were connected with criminal activity. In each case in which recording of identifying marks was upheld, the law enforcement officer was able to point to facts known to him prior to recording and checking the numbers which aroused an objectively *Supp. 27 based, articulable suspicion that the item under inspection was connected with a crime. By contrast, in those cases disapproving recordation of serial numbers, officials conducting the search could point to no such facts.”
That is the situation here. There is no nexus between the camera and any criminal activity. While it was proper for the officers to examine the camera for narcotic concealment, their inspection and copying of the serial number was based on nothing more than a mere hunch or surmise. Unless we are willing to justify general exploratory searches on mere expediency—“Well, so long as we are here, we might as well check out the numbers on this camera, T.V., refrigerator, stove, etc., as they might possibly be stolen,”— the search at bench cannot be approved. Approval of general exploratory searches was not what the founding fathers had in mind in adopting the Fourth Amendment to the United States Constitution.
I would suppress the seizure of the serial numbers on the camera and the seizure of the camera itself, and reverse the judgment.