[No. H002553. Sixth Dist. Dec. 1, 1987.]

THE PEOPLE, Plaintiff and Respondent, v.
JOANN MILLER, Defendant and Appellant.

COUNSEL

Bernard P. Bray, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, David S. Salmon and Laurence K. Sullivan, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**PREMO, J.\*—**

Appellant was charged with possession of cocaine for sale (Health & Saf. Code, § 11351) and maintaining a place to sell controlled substances (Health & Saf. Code, § 11366). After being held to answer at preliminary examination, appellant filed a motion pursuant to Penal Code section 1538.5 to suppress all evidence obtained during a search of her premises. The motion was denied, and this court denied a petition for writ of mandate and stay of the trial proceedings. Appellant pleaded guilty to one count of cocaine possession in violation of Health and Safety Code section 11350, subdivision (a). She was placed on probation for three years on condition inter alia that she serve 37 days in county jail. This appeal ensued. Appellant contends solely that the search of her residence was illegal. We disagree with her contentions and affirm the judgment.

## I. FACTS

In February of 1986, Agent Stribling of the San Jose field office of the United States Secret Service obtained a federal warrant to search appellant's residence in San Jose. The warrant authorized seizure "of counterfeit currency, the means and instruments used in acquiring, manufacturing and disposing of such counterfeit currency, including, but not limited to paper, plates, inks, colors, negatives, photographic equipment, cutting materials, and all property that constitutes evidence of the offense."

Although Agent Stribling's investigation was focused on the manufacture of counterfeit currency, in January of 1986 he had received information from a confidential informant that another resident at appellant's home—John DeRose—possessed a substantial amount of cocaine. Agent Stribling passed this information on to Sergeant Mike Micelli, a San Jose police officer assigned to the Drug Enforcement Task Force.

---

\* Assigned by the Chairperson of the Judicial Council.

In turn, Sergeant Micelli informed San Jose Narcotics Officer Brian Hyland that DeRose was selling narcotics out of appellant's residence. Consequently, Hyland twice staked out the residence to monitor possible drug trafficking, but he observed nothing to substantiate the allegation that drugs were being sold there.

About a week after Hyland had staked out the residence, Agent Stribling asked Sergeant Micelli for assistance in executing the federal warrant. Stribling explained that the Secret Service field office in San Jose has only four agents and routinely relies on other agencies, including the San Jose Police Department, to assist the office when needed. Stribling did not request any specific officers.

Micelli and Hyland took part in the search. At a presearch briefing, the officers were told that they were to search for counterfeit currency and evidence of its manufacture. The San Jose officers were assigned to teams led by federal agents who were to search specific areas. Hyland was assigned to accompany a Secret Service agent who was to secure the basement and then search upstairs, beginning with the master bedroom.

Although the Secret Service and Hyland had information that there might be narcotics on the premises, Hyland was not told to look for narcotics. He did, however, have an interest in the counterfeit investigation because some heroin dealers he was investigating had been found in possession of counterfeit currency.

In executing the warrant, Stribling gave a proper knock notice. He received no response, and, consequently, Hyland and a Secret Service agent forced the door open with a battering ram. Hyland and the agent then went immediately to the bedroom in the basement where they saw cocaine in plain view on top of a dresser. They arrested a suspect found in the bedroom and removed him to the living room, where appellant was being detained.

Hyland then searched the bedroom in the upper portion of the house with another San Jose officer and at least one Secret Service agent. Inside this bedroom, Hyland found printing materials which could be used to print counterfeit currency. Inside a chest of drawers, Hyland also found insurance papers in appellant's name, cocaine, and cocaine paraphernalia.

After the search began and narcotics were found, Hyland was, in his words, "designated finder of the other contraband that was found, other than what was named in the search warrant, primarily the drugs and related paraphernalia . . . ."

After searching the upstairs bedroom, Hyland returned to the basement bedroom which he searched for about 45 minutes to an hour with another San Jose officer and two Secret Service agents. On top of a dresser and inside a cabinet Hyland found more cocaine, heroin, and drug paraphernalia.

Hyland searched only the two bedrooms, which were the only places narcotics or paraphernalia were found. Although Hyland admitted he had information that there might be narcotics at the residence, he denied looking "specifically" for narcotics. He testified his purpose was to assist the Secret Service agents in the execution of the federal search warrant.

The trial court accepted the People's position that the seizure of the narcotics and related evidence was justified under the plain view doctrine. The court found specifically that Hyland acted in good faith in assisting with the execution of the warrant, and was not "off on his own independent narcotics mission."

## II. DISCUSSION

Appellant contends that the seizure of the narcotics evidence cannot be justified under the plain view doctrine for two reasons: first, because the discovery of that evidence was not "inadvertent," and secondly because the San Jose officers used the federal warrant as a pretext to conduct a general search for drugs. We reject both arguments.

### A. There Is No Inadvertence Requirement for Plain View Seizures in California

The short answer to appellant's first argument is that there is no requirement that the discovery of evidence be inadvertent to justify its seizure under the plain view doctrine. In making this argument, appellant relies on *Coolidge* v. *New Hampshire* (1971) 403 U.S. 443 [29 L.Ed.2d 564, 91 S.Ct. 2022], in which a *plurality* of the United States Supreme Court concluded that inadvertent discovery was a prerequisite to the plain view seizure of evidence. However, in *North* v. *Superior Court* (1972) 8 Cal.3d 301 [104 Cal.Rptr. 833, 502 P.2d 1305, 57 A.L.R.3d 155], the California Supreme Court specifically refused to adopt the inadvertence requirement. The *North* court observed: "If the plurality opinion in *Coolidge* were entitled to binding effect as precedent, we would have difficulty distinguishing its holding from the instant case, for the discovery of petitioner's car was no more 'inadvertent' than in *Coolidge*. However, that portion of Justice Stewart's plurality opinion which proposed the adoption of new restrictions to the 'plain view' rule was signed by only four members of the court (Stewart,

J., Douglas, J., Brennan, J., and Marshall, J.). Although concurring in the judgment, Justice Harlan declined to join in that portion of the opinion (see 403 U.S. at p. 491 . . .), and the four remaining justices expressly disagreed with Justice Stewart on this point (*id.* at pp. 505-510 . . ., dis. opn. by Black, J., joined by Burger, C. J., and Blackmun, J.; *id.* at p. 522 . . ., dis. opn. by White, J., joined by Burger, C. J.). [¶] It follows that the 'plain view' issue raised by the plurality opinion was in fact considered by an equally divided court, and hence was not actually decided in *Coolidge.* (See *People* v. *McKinnon, supra,* 7 Cal.3d at p. 911.) **(2)** As stated in *McKinnon* involving a different aspect of the *Coolidge* plurality opinion, 'under settled doctrine, the judgment of an equally divided United States Supreme Court "is without force as precedent." [Citation.] Thus we are bound to apply the [vehicle search] rule according to our present understanding of its scope.' (*Id.*)" (*Id.* at pp. 307-308.)

In short, "[i]n California, the fact that the officer had foreknowledge of the presence of the evidence in that place is of no constitutional significance; that is, there is no 'inadvertence' requirement in this state." (*People* v. *Cooper* (1978) 83 Cal.App.3d 121, 131 [147 Cal.Rptr. 705]; accord, *People* v. *Wilmarth* (1982) 132 Cal.App.3d 383, 387 [183 Cal.Rptr. 176]; *People* v. *Kilpatrick* (1980) 105 Cal.App.3d 401, 409 [164 Cal.Rptr. 349], disapproved on another point in *People* v. *Bustamante* (1981) 30 Cal.3d 88 [177 Cal.Rptr. 576, 634 P.2d 927].)

We are not persuaded by the authorities to the contrary cited by appellant. In both *People* v. *Albritton* (1982) 138 Cal.App.3d 79, 87 [187 Cal.Rptr. 652] and *People* v. *Murray* (1978) 77 Cal.App.3d 305, 310 [143 Cal.Rptr. 502], the courts did hold that the plain view seizure of contraband not listed in the warrant must be inadvertent. However, in both cases the courts relied on the plurality opinion in *Coolidge* to support this conclusion, but did not address the impact of *North* v. *Superior Court, supra.* We are persuaded that the Supreme Court specifically rejected the inadvertence requirement in *North,* and, consequently, we are bound by stare decisis to follow the Supreme Court's position on this issue. (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937]; see also, *People* v. *Tewksbury* (1976) 15 Cal.3d 953, 970-971, fn. 17 [127 Cal.Rptr. 135, 544 P.2d 1335], cert. den. 429 U.S. 805 [50 L.Ed.2d 65, 97 S.Ct. 38].)

B.  *The San Jose Officers Acted in Good Faith in Helping With the Execution of the Federal Warrant*

Appellant next contends that the San Jose officers did not assist with execution of the federal warrant in "good faith," but instead used that

warrant as a pretext to conduct a general search for drugs. ■ In ruling on this issue, we must accept the implicit and explicit factual findings of the trial court to the extent they are supported by substantial evidence (*People v. Leyba* (1981) 29 Cal.3d 591, 596-597 [174 Cal.Rptr. 867, 629 P.2d 961]), although we have the ultimate responsibility to measure the facts against the constitutional standard of reasonableness. On that issue the Court of Appeal exercises its independent judgment. (*Ibid.*)

■ Generally, in executing a warrant, only those objects described in the warrant may be seized. (*Skelton v. Superior Court* (1969) 1 Cal.3d 144, 155 [81 Cal.Rptr. 613, 460 P.2d 485].) However, "[w]hen officers, in the course of a bona fide effort to execute a valid search warrant, discover articles which, although not included in the warrant, are reasonably identifiable as contraband, they may seize them whether they are initially in plain sight or come into plain sight subsequently, as a result of the officers' efforts." (*Id.* at p. 157.) The plain view doctrine is limited by the requirement that the search under the warrant be carried out in good faith. (*People v. McGraw* (1981) 119 Cal.App.3d 582, 600 [174 Cal.Rptr. 711].) "The search may not be a general exploration but must be specifically directed to the means and instrumentalities by which the crime charged had been committed and the agents *must have conducted their search in good faith for the purpose of discovering the objects specified in the warrant.*" (*United States v. Tranquillo* (M.D.Fla. 1971) 330 F.Supp. 871, 875, italics in original; quoted in *People v. McGraw, supra,* 119 Cal.App.3d at p. 600.)

■ We believe the present case is analogous to *People v. McGraw, supra,* 119 Cal.App.3d 582. In *McGraw,* Oakland police officers obtained a warrant to search McGraw's residence for certain specified objects of stolen property. The Oakland officers contacted Officer Faulkner of the Piedmont Police Department because Faulkner was also investigating McGraw in connection with a burglary in Piedmont. The Oakland police specifically asked Faulkner to accompany them on the search. Faulkner did not accompany the officers at the outset of the search. Rather, he arrived at the search after it had already begun and identified a number of items, shown to him by the search party, as items taken in the Piedmont burglary. These items were not listed in the warrant, but were seized at Faulkner's direction. (*Id.* at pp. 598-599.)

In rejecting the argument that the search of McGraw's residence was not conducted in "good faith" and that Faulkner used the warrant as a pretext to conduct "'an unreasonable, exploratory shopping trip,'" the *McGraw* court treated the issue as one of fact. (*People v. McGraw, supra,* 119 Cal.App.3d at pp. 602-603.) Specifically, the *McGraw* court found there was substantial evidence to support the trial court's implicit finding that

Faulkner was summoned "not to explore but to match contraband to specific offenses." (*Id.* at p. 603.)

We are presented with a similar factual issue in this case. On the one hand, appellant contends that the primary—if not sole—reason the San Jose officers assisted in the search was to look for evidence of narcotics. On the other hand, the trial court specifically found that the San Jose officers were there to assist in execution of the federal warrant, and were not off on an "independent narcotics mission."

There is more than ample evidence in the record to support the trial court's conclusion. Stribling testified that his office routinely relied on outside agencies for assistance when needed; the San Jose officers were told that they were to search for counterfeit currency and evidence of its manufacture; Hyland's search was completely consistent with a search for the items listed in the warrant (see FACTS, *ante,* at p. 849); and, finally, Hyland testified that his subjective purpose was to assist the Secret Service agents in the execution of the warrant.

In short, there is ample evidence that the search was not a general exploration for narcotics and that all officers involved "conducted their search in good faith for the purpose of discovering the objects specified in the warrant." (*United States* v. *Tranquillo, supra,* 330 F.Supp. at p. 875, italics omitted; see also, *People* v. *McGraw, supra,* 119 Cal.App.3d at p. 875.)

The authorities cited by appellant on this issue are not controlling. In *People* v. *Albritton, supra,* 138 Cal.App.3d 79, a police officer assigned to the auto theft detail accompanied officers from the narcotics unit who were executing a warrant for narcotics at Albritton's residence. The officer—Boggs—apparently invited himself along on the search. Although Boggs suspected that Albritton might be in possession of stolen vehicles, he did not tell this to the officer in charge of the narcotics search. Instead, he immediately split off from the officers searching for narcotics and began searching the rear area of the residence and garage for stolen vehicles. He found several vehicles, called in their identification numbers, and discovered that some of them were stolen. He did not check the serial numbers to identify the occupants of the premises, but, by his own admission, did so because he suspected the vehicles were stolen. (*Id.* at pp. 82-85.)

In reversing the trial court's decision upholding the search, the *Albritton* court relied on the theory that a plain view seizure of evidence conducted pursuant to a warrant must be inadvertent. (138 Cal.App.3d at pp. 87-88.) In addition, the court indicated that the evidence presented in the case was subject to only one interpretation: namely, that Boggs used the warrant " 'as

a pretext to gain entry to the premises for the purpose of conducting a general exploratory search' for stolen vehicles." (*Id.* at p. 88, quoting *People* v. *Murray, supra,* 77 Cal.App.3d 305, 310.)

We have already expressed our view that the "inadvertence" requirement is not the law in California, and, because *Albritton* relies on that requirement, we believe that case is inapposite.

*People* v. *Mazel* (1974) 45 Cal.App.3d Supp. 1 [119 Cal.Rptr. 190], is of even less help to appellant. That case involved two separate searches: one initially conducted by federal agents pursuant to a warrant, and a second later conducted by state officials at the invitation of the federal agents. There was no indication that the state agents were assisting with the execution of the federal warrant. (*Id.* at Supp. 3.) As we have observed, that is not the case here.

Finally, because we affirm the judgment on what are essentially substantial evidence grounds, we do not address the Attorney General's contention that the subjective motivations of searching officers are never relevant to the validity of a search conducted within the proper scope of a valid warrant.

The judgment is affirmed.

Agliano, P. J., and Brauer, J., concurred.

Appellant's petition for review by the Supreme Court was denied March 24, 1988.